STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. TONI M. FORTIN AND BRUCE ALLEN FORTIN

No. 296PA98

(Filed 9 April 1999)

**1. Insurance— automobile—UIM coverage—rejection invalid**

A rejection of UIM coverage was no longer effective following the 1991 amendment of N.C.G.S. § 20-279.21(b)(4). Consistent with the language and intent of that statute, an insurer is required to offer its insureds the opportunity to select UIM coverage limits in an amount between $25,000 and $1,000,000 and to obtain a valid rejection or selection of different UIM coverage limits under this new option, notwithstanding that the policy is a renewal policy.

**2. Insurance— automobile—UIM coverage—renewal form**

Plaintiff-insurer did not satisfy the requirements of N.C.G.S. § 20-279.21(b)(4) by providing defendants with its version of a renewal form which defendant Bruce Fortin executed and which purportedly rejected UIM coverage. Defendant's version of

renewal form NC0186 was not the form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance, and did not require the rejection to be made in writing, as the statute specifically provides, but by contacting a State Farm agent. The language of the statute is mandatory and the rejection was not in accord with the statute.

### 3. Insurance— automobile—UIM coverage—amount

An insured's UIM coverage was $100,000 per person and $300,000 per accident where the version of N.C.G.S. § 20-279.21(b)(4) in effect on the date of the last renewal of the policy and on the date of the accident provided that, if the insured did not reject underinsured coverage or select different limits, the amount of underinsured motorist coverage would be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy; the limits on the dates of the last renewal and the accident were $100,000 per person and $300,000 per accident; and there was neither a valid rejection of UIM coverage nor a selection of different coverage limits.

Justice PARKER dissenting.

Chief Justice MITCHELL joins in this dissenting opinion.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review a unanimous decision of the Court of Appeals, 129 N.C. App. 839, 501 S.E.2d 351 (1998), affirming an order of summary judgment in favor of defendants signed by Barnette, J., on 18 July 1997, in Superior Court, Durham County. Heard in the Supreme Court 12 February 1999.

*Haywood, Denny & Miller, L.L.P., by Robert E. Levin, for plaintiff-appellant.*

*Gibbons, Cozart, Jones, Hughes, Sallenger & Taylor, by W. Earl Taylor, Jr., for defendant-appellees.*

FRYE, Justice.

In a case of first impression before this Court, we must decide whether there was a valid rejection of underinsured motorist (UIM) coverage for a renewal of a personal auto policy issued subsequent to the effective date of the 1991 amendments to N.C.G.S. § 20-279.21(b)(4), the UIM provision of the Motor Vehicle Safety and Financial Responsibility Act (the Act). The Court of Appeals, affirm-

ing the trial court in this case, held that there was not. For the reasons stated herein, and by our Court of Appeals in *Maryland Cas. Co. v. Smith*, 117 N.C. App. 593, 452 S.E.2d 318, *disc. rev. denied*, 340 N.C. 114, 456 S.E.2d 316 (1995), we agree.

On 18 November 1994, defendant Toni Fortin was injured in an automobile accident. At the time of the accident, Toni Fortin was a passenger in a vehicle operated by her husband, defendant Bruce Fortin. Mrs. Fortin filed a civil suit and obtained a jury verdict of $218,000 against Vincente Jaimes, the operator of the other vehicle. Jaimes had insufficient liability coverage to fully satisfy the judgment. The vehicle operated by Mr. Fortin was insured under a policy issued by plaintiff State Farm Mutual Automobile Insurance Company (State Farm). Toni Fortin made a demand of plaintiff for payment of UIM benefits under the policy. Plaintiff declined to make any payment, contending that the policy provided no UIM benefits.

At the time of the collision, the Fortins' State Farm policy provided personal injury liability limits of $100,000/ $300,000 and uninsured motorist (UM) coverage of $100,000/ $300,000 per person per accident. On 15 July 1991, Bruce Fortin, a named insured, executed a selection/rejection form, selecting the option: "I choose to reject Uninsured/Underinsured Motorists Coverage and select Uninsured Motorists Coverage at limits of [Bodily Injury] 100/300; [Property Damage] 100." The policy had a renewal date of 16 January 1992. At the time for renewal, plaintiff forwarded to defendants, and Bruce Fortin executed, a selection/rejection form that included the following language: "If you wish to make a change or select other limits contact your State Farm Agent. YOUR CURRENT U BODILY INJURY LIMITS ARE $100,000/$300,000." There is no evidence in the record that Bruce Fortin contacted his insurance agent to select any different coverage than that which existed at the time of renewal.

Plaintiff filed this action on 2 April 1997 seeking a declaratory judgment that there was no UIM coverage available to its insured defendants under any policy issued by State Farm. The trial court entered summary judgment in favor of defendants. The Court of Appeals affirmed, holding that at the time of the accident, on 18 November 1994, the State Farm policy issued to defendants included UIM coverage. Plaintiff appealed from this decision, and on 5 November 1998, this Court granted plaintiff's petition for writ of certiorari.

STATE FARM MUT. AUTO. INS. CO. v. FORTIN

[350 N.C. 264 (1999)]

**[1]** The issue before this Court, whether the State Farm policy provides UIM coverage to defendants, is dependent upon whether there was a valid rejection of UIM coverage by Bruce Fortin for a renewal of the policy subsequent to 5 November 1991, the effective date of the 1991 amendments to N.C.G.S. § 20-279.21(b)(4). Absent a valid rejection, a policy that includes UM coverage and contains bodily injury liability limits exceeding the statutory minimums must provide UIM coverage. N.C.G.S. § 20-279.21(b)(4) (1993 & Supp. 1998); *see also Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 263-64, 382 S.E.2d 759, 762 (1989). We conclude that there was no valid rejection of UIM coverage in this case.

Prior to the amendment of N.C.G.S. § 20-279.21(b)(4) in 1991, an automobile liability insurance policy with bodily injury liability limits in excess of the statutory minimum was required to provide UIM coverage equal to the policy's bodily injury liability limits, absent an effective rejection. N.C.G.S. § 20-279.21(b)(4) (1989); *see also Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 147, 400 S.E.2d 44, 50 (1991). Effective 5 November 1991, the General Assembly amended the Act to allow an insured to select UIM coverage "in an amount not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 [$25,000 and $50,000] nor greater than one million dollars." N.C.G.S. § 20-279.21(b)(4) (1993 & Supp. 1998). This amendment created a significant new choice for insureds regarding their options for UIM coverage. Instead of offering only two choices, rejection of UIM coverage or UIM coverage at the same limits as bodily injury liability coverage, the statute, as amended, permits insureds to select any UIM coverage limit from $25,000 to $1,000,000.

After its 1991 amendment, N.C.G.S. § 20-279.21(b)(4) also provided, in part, as follows:

> An insured named in the policy may select different coverage limits as provided in this subdivision. Once the named insured exercises this option, the insurer is not required to offer the option in any renewal . . . policy unless the named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured is valid and binding on all insureds and vehicles under the policy.
>
> If the named insured rejects the coverage required under this subdivision, the insurer shall not be required to offer the cover-

age in any renewal . . . policy unless the named insured makes a written request for the coverage.

N.C.G.S. § 20-279.21(b)(4) (effective 5 November 1991).[1]

We agree with the reasoning of the Court of Appeals in *Maryland Casualty Co. v. Smith* when it addressed the effect of these 1991 statutory amendments on an insured's earlier rejection of UIM coverage. 117 N.C. App. 593, 452 S.E.2d 318. In *Maryland Casualty*, the insured, Ralph Smith, executed a selection/ rejection form NC0185 rejecting UIM coverage on 29 September 1991. The Smiths renewed their policy in March 1992 but did not request that UIM coverage be added at that time. Holding that the rejection executed on 29 September 1991 was no longer valid and effective after the 1991 amendment of N.C.G.S. § 20-279.21(b)(4), the Court of Appeals stated:

> By providing that the insurer is *not* required to offer the option to select different policy limits once the named insured has exercised that option, the legislature in effect provided that the insured must be given the opportunity to exercise that option initially. . . .
>
> . . . [A]t the time of the renewal, the insureds should have been permitted to make a fresh choice as to whether they wished to purchase underinsured coverage or reject it.

*Id.* at 598, 599, 452 S.E.2d at 321. We likewise conclude that, consistent with the language and intent of N.C.G.S. § 20-279.21(b)(4), an insurer is required to offer its insureds the opportunity to select UIM coverage limits in an amount between $25,000 and $1,000,000 and to obtain a valid rejection or selection of different UIM coverage limits under this new option, notwithstanding that the policy is a renewal policy. Accordingly, Bruce Fortin's July 1991 rejection of UIM coverage under the previous option was no longer effective following the 1991 amendment of N.C.G.S. § 20-279.21(b)(4).

---

1. The statute was further amended in 1992 as follows:

    Once the option to reject underinsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal . . . policy unless a named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured or the failure to select or reject is valid and binding on all insureds and vehicles under the policy.

N.C.G.S. § 20-279.21(b)(4) (effective 1 October 1992).

[2] The Act governs not only the coverage options which must be made available to insureds, but also specifies the manner in which the choice must be offered and made. We now consider whether, in this case, plaintiff satisfied the requirements of N.C.G.S. § 20-279.21(b)(4) by providing defendants with the State Farm version of renewal form NC0186 which Bruce Fortin executed in January 1992. On that date, the statute provided, in pertinent part, "[r]ejection of this coverage for policies issued after October 1, 1986, shall be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance." N.C.G.S. § 20-279.21(b)(4) (Supp. 1991). We note first that the State Farm version of renewal form NC0186 that Bruce Fortin executed in January 1992 was not the "form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance." We note further that the statute specifically provides that rejection "shall be made in writing" on the approved form. The State Farm renewal form required that the rejection be made, not "in writing" on the form, but by contacting the State Farm agent. Thus, the rejection was not in accord with the statute.

In what appears to have been a clarifying amendment, the General Assembly amended this portion of the statute, effective 1 October 1992, to read as follows:

> Rejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau shall be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.

N.C.G.S. § 20-279.21(b)(4) (1993 & Supp. 1998).[2] The language of this provision is mandatory. An insurer is obligated to obtain the insured's selection or rejection of UM or UM/UIM coverage in writing and on a form promulgated by the Rate Bureau and approved by the Commissioner.

Rate Bureau form NC0185 for selection or rejection of UM and UM/UIM coverage was used for new automobile liability insurance policies issued prior to 5 November 1991 or policies renewed prior to that date. It was a version of this form that Bruce Fortin executed on 15 July 1991. Pursuant to the 1991 amendments to N.C.G.S. § 20-279.21(b)(3) and (b)(4), the UM and UM/UIM coverage

---

2. N.C.G.S. § 20-279.21(b)(3) contains a similar provision regarding selection/rejection of UM coverage.

selection/rejection form was redrafted by the Rate Bureau, and two new forms approved by the Department of Insurance became effective 5 November 1991. The revised form NC0185 contains an explanation of the UM and UM/UIM options available to an insured and, at the bottom of the form, provides the following three choices:

____ I choose to reject Combined Uninsured/ Underinsured Motorists Coverage and select Uninsured Motorists Coverage at limits of:

Bodily Injury ____; Property Damage ____

____ I choose Combined Uninsured/Underinsured Motorists Coverage at limits of:

Bodily Injury ____; Property Damage ____

____ I choose to reject both Uninsured and Combined Uninsured/Underinsured Motorists Coverages.

Form NC0186 was approved for use by insurance companies for renewal policies. Form NC0186 contains the same explanation of coverage options as form NC0185, but it does not provide the insured with the three clear choices from which to exercise a rejection of UIM coverage or a selection of different limits. In order to make a change from existing coverage, or to select other coverage limits, the insured is instructed to contact the insurer.

Plaintiff contends that the selection/rejection form provided to defendants and signed by Bruce Fortin on 16 January 1992 contained all of the language of the Rate Bureau form NC0186; that it informed defendants of the new law; and therefore, that rejection of UIM coverage was made on a proper form. Defendants contend, *inter alia*, that the State Farm renewal form executed by Bruce Fortin on 16 January 1992 necessarily contemplated a renewal of previously selected coverage and did not offer defendants a fresh choice to reject UIM coverage or select different coverage limits as provided by the amended statute. Therefore, because the 15 July 1991 rejection of UIM coverage was rendered invalid by the intervening 1991 amendment of N.C.G.S. § 20-279.21(b)(4) and because plaintiff failed to provide defendants with the proper selection/rejection form, form NC0185, at the time of the policy's renewal on 16 January 1992, there was no valid rejection of UIM coverage under the State Farm policy.

We agree with defendants that plaintiff did not offer them the opportunity to make a new choice regarding UIM coverage as required by N.C.G.S. § 20-279.21(b)(4), and therefore, there was no valid rejection of UIM coverage for the renewal policy. Because there was no valid rejection of UIM coverage on the revised form NC0185, at the time of the Fortins' accident, UIM coverage was included in the policy in accordance with the provisions of N.C.G.S. § 20-279.21(b)(4) as amended in 1991.

[3] We now address the amount of UIM coverage provided by the State Farm policy. While the Court of Appeals, in affirming the trial court, held that the policy did include UIM coverage, neither court below addressed the amount of UIM coverage provided. Defendants contend that they have UIM coverage in the amount of $1,000,000, citing *Metropolitan Property & Cas. Ins. Co. v. Caviness*, 124 N.C. App. 760, 478 S.E.2d 665 (1996), *disc. rev. denied*, 345 N.C. 642, 483 S.E.2d 710 (1997). We disagree. In *Caviness*, an earlier version of N.C.G.S. § 20-279.21(b)(4) was in effect, and the Court of Appeals determined that the statute was ambiguous as to the amount of UIM coverage available to an insured who failed to select or reject UIM coverage. *Id.* at 763, 478 S.E.2d at 667. Because the Act must be liberally construed to give effect to its remedial purpose of providing innocent victims of financially irresponsible motorists with the fullest possible protection, the Court of Appeals in *Caviness* concluded that the insured was entitled to $1,000,000 in UIM coverage, the highest available limit of UIM coverage under the Act at that time. *Id.* at 763-65, 478 S.E.2d at 668. .

However, effective 1 October 1992, N.C.G.S. § 20-279.21(b)(4) was amended to provide that "[i]f the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." Act of July 2, 1992, ch. 837, sec. 9, 1991 N.C. Sess. Laws 322, 339-40, 342. This was the version of the statute in effect on the date of the last renewal of the policy prior to and on the date of defendants' accident, 18 November 1994. On each of these dates, the highest limit of bodily injury liability coverage for any one vehicle in the State Farm policy was $100,000 per person and $300,000 per accident. Therefore, because there was neither a valid rejection of UIM coverage nor a selection of different coverage limits, defendants' UIM coverage is $100,000 per person and $300,000 per accident.

**STATE FARM MUT. AUTO. INS. CO. v. FORTIN**

[350 N.C. 264 (1999)]

For the foregoing reasons, we hold that the State Farm policy provides defendant Toni Fortin with $100,000 in UIM coverage. The decision of the Court of Appeals is therefore affirmed as modified.

MODIFIED AND AFFIRMED.

Justice PARKER dissenting.

I respectfully dissent. The record includes the affidavit of Bernard Cox, Assistant Deputy Commissioner in the Property and Casualty Division of the North Carolina Department of Insurance, which states: "Form NC 01 86 (Ed. 7/91) was approved by the Department of Insurance for use by companies for renewal business."

Form NC 01 86 as revised in conjunction with the 1991 amendments to N.C.G.S. § 20-279.21(b)(4) provides:

SELECTION/REJECTION FORM
UNINSURED MOTORISTS COVERAGE
COMBINED UNINSURED/UNDERINSURED
MOTORISTS COVERAGE

Uninsured Motorists Coverage (UM) and Combined Uninsured/Underinsured Motorists Coverage (UM/UIM) and coverage options are available to me. I understand that:

1. the UM and UM/UIM limits shown for vehicles on this policy may not be added together to determine the total amount of coverage provided.

2. UM and UM/UIM bodily injury limits up to $1,000,000 per person and $1,000,000 per accident are available.

3. UM property damage limits up to the highest policy property damage liability limits are available. Coverage for property damage is applicable only to damages caused by uninsured motor vehicles.

4. my selection or rejection of coverage below will apply to any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy with this company, or affiliated company, unless a named insured makes a written request to the company to exercise a different option.

5. my selection or rejection of coverage below is valid and binding on all insureds and vehicles under the policy, unless a

named insured makes a written request to the company to exercise a different option.

Having been given the opportunity to select other limits, I hereby select the Uninsured Motorists Coverage or Combined Uninsured/Underinsured Motorists Coverage limits, if any, as shown on the enclosed renewal notice, and reject any other such coverage or limits.

(If you wish to make a change or select other limits contact company/agent/telephone number)

A Named                     Policy/
Insured _____    App. Number _____

Signature _____    Agent _____

Date _____

The only difference between Form 01 86 and Form 01 85 is that on Form 01 85 the unnumbered paragraphs after paragraph five are deleted and the following is inserted:

(CHOOSE ONLY ONE OF THE FOLLOWING)

____ I choose to reject Combined Uninsured/Underinsured Motorists Coverage and select Uninsured Motorists Coverage at limits of:

Bodily Injury_____; Property Damage_____

____ I choose Combined Uninsured/Underinsured Motorists Coverage at limits of:

Bodily Injury_____; Property Damage_____

____ I choose to reject both Uninsured and Combined Uninsured/Underinsured Motorists Coverages.

A Named                     Policy/
Insured _____    App. Number_____

Signature _____    Agent _____

Date _____

The form sent to the insureds and executed by Bruce Fortin at the time for renewal of the policy in January 1992 provided:

**STATE FARM MUT. AUTO. INS. CO. v. FORTIN**

[350 N.C. 264 (1999)]

## URGENT NOTICE

State Farm Mutual Automobile Insurance Company

Selection/Rejection Form
Uninsured Motorists Coverage
Combined Uninsured/Underinsured Motorists Coverage

North Carolina law states that, unless rejected, no policy of motor vehicle liability insurance shall be issued or deferred unless it contains coverage for the persons insured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. (Coverage for property damage is subject to an exclusion of the first $100,000. In addition to Uninsured Motorists Coverage (Coverage U), an optional Combined Uninsured/Underinsured Motorists Coverage (Coverage U1) must be made available. Coverage U1 also includes underinsured motorists protection. A motor vehicle is underinsured if the liability limits of the at-fault owner or driver are less than the Uninsured/Underinsured limits of the insured's policy. Coverage U1 can only be purchased if your liability insurance limits are greater than the minimums required by North Carolina law.

Coverage U and Coverage U1 are available with limits up to $1,000,000 per accident for bodily injury and up to the policy property damage liability limits for property damage. Coverage for property damage is applicable only to damages caused by uninsured motor vehicles.

Uninsured Motorists Coverage (UM) and Combined Uninsured/Underinsured Motorists Coverage (UM/UIM) and coverage options are available to me. I understand that:

1. the UM and UM/UIM limits shown for vehicles on this policy may not be added together to determine the total amount of coverage provided.

2. UM and UM/UIM bodily injury limits up to $1,000,000 per person and $1,000,000 per accident are available.

3. UM property damage limits up to the highest policy property damage liability limits are available. Coverage for property damage is applicable only to damages caused by uninsured motor vehicles.

4. my selection or rejection of coverage below will apply to any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy with this company, or affiliated company, unless a named insured makes a written request to the company to exercise a different option.

5. my selection or rejection of coverage below is valid and binding on all insureds and vehicles under the policy, unless a named insured makes a written request to the company to exercise a different option.

Having been given the opportunity to select other limits, I hereby select the Uninsured Motorists Coverage or Combined Uninsured/Underinsured Motorists Coverage limits, if any, as shown on the enclosed renewal notice, and reject any other such coverage or limits.

If you wish to make a change or select other limits contact your State Farm Agent.

YOUR CURRENT U BODILY LIMITS ARE $100,000/$300.000.

A Named                              Policy/
Insured FORTIN, TONI C. & BRUCE A.  App. Number 246-7674-A26-33I

Signature _____ Agent CHUCK FINKLEA Jr.

Date _____

SEE REVERSE SIDE FOR IMPORTANT INFORMATION

The reverse side of the form alerted the recipient in bold letters "ACTION NEEDED"; further explained what the law required, how UM/UIM coverage protected the insured, and what options were available; and provided a table showing the premium for coverages.

In my view, the State Farm form, which included the exact same language as NC Form 01 86 and was sent to the Fortins with the policy renewal, satisfied the statutory requirements in effect in January 1992 that "[r]ejection of this coverage for policies after October 1, 1986 shall be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance." N.C.G.S. § 20-279.21(b)(4) (Supp. 1991).

Further, I cannot agree with the majority that "plaintiff did not offer [defendants] the opportunity to make a new choice regarding

UIM coverage as required by N.C.G.S. § 20-279.21(b)(4)." The explanation of the options on NC Form 01 86 is exactly the same as on NC Form 01 85. The statute only requires that the insured be given the opportunity to select or reject other limits. Nothing in the statute suggests that the only way the opportunity to make this decision can be validly offered is by giving the insured the opportunity to fill in the blanks on a form. Like the panel of the Court of Appeals in *Maryland Casualty Co. v. Smith*, 117 N.C. App. 593, 452 S.E.2d 318, *disc. rev. denied*, 340 N.C. 114, 456 S.E.2d 316 (1995), the majority of this Court ignores the substance of paragraphs one through five on NC Form 01 86 and the language which states:

> Having been given the opportunity to select other limits, I hereby select the Uninsured Motorists Coverage or Combined Uninsured/Underinsured Motorists Coverage limits, if any, as shown on the enclosed renewal notice, and reject any other such coverage or limits.

> If you wish to make a change or select other limits contact your State Farm Agent.

How the language offering insureds the opportunity to select or reject different options could be any clearer is difficult to understand.

As a practical matter when a person applies for a new policy, an insurance agent is usually involved in taking the application and assisting the proposed insured in filling out the necessary forms. Hence, NC Form 01 85 with blanks to be checked and blanks where numbers are to be written is feasible. However, policy renewals are usually handled through the mail without the involvement of the insurance agent. Hence, a form which explains the options and then tells the insured in plain, easily-understood language, "[i]f you wish to make a change or select other limits contact your State Farm Agent," is far less likely to confuse and mislead the insured. The average person, unschooled in the terminology and complexities of insurance contracts, would not be confident in filling in the blanks on NC Form 01 85 without the assistance of the individual's insurance agent.

Finally, under the majority's interpretation of the statute, NC Form 01 86, promulgated by the Rate Bureau and approved by the Commissioner of Insurance, would have been unnecessary. Irrespective of how long the policy had been in force, an insured could not validly reject underinsured motorist coverage after the 1991 amendments without having first been furnished NC Form 01 85.

In sum, in my opinion, the form furnished by plaintiff to defendants in the instant case complied in all respects with N.C.G.S. § 20-279.21(b)(4), as amended, by informing defendants, in language about as simple as the statute can be explained, of the coverage they had, the new options available, and the procedure to select or reject those options. Insured's execution of the form on 11 January 1992 constituted a valid rejection of underinsured motorist coverage. Accordingly, I vote to reverse.

Chief Justice MITCHELL joins in this dissenting opinion.