NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff v.
MITCHELL DREW JENKINS, Defendant

No. COA09-1523

(Filed 19 October 2010)

**Insurance— underinsured motorist coverage—no selection form—opportunity consciously rejected**

Summary judgment was properly entered for plaintiff-insurer in a declaratory judgment action to determine whether defendant was entitled to underinsured motorist (UIM) coverage. Despite the lack of a selection/rejection form, there was no dispute that

the co-holder of the policy had the opportunity to reject or select different UIM coverage limits.

Appeal by defendant from order entered 18 June 2009 by Judge Anderson D. Cromer in Superior Court, Surry County. Heard in the Court of Appeals 28 April 2010.

*Willardson Lipscomb & Miller, L.L.P., by William F. Lipscomb, for plaintiff-appellee.*

*Lewis & Daggett, Attorneys at Law, P.A., by Douglas E. Nauman, for defendant-appellant.*

*Young Moore and Henderson P.A. by Glenn C. Raynor and Bryan G. Scott, for the North Carolina Association of Defense Attorneys, amicus curiae.*

STROUD, Judge.

Defendant appeals a summary judgment order allowing summary judgment in favor of plaintiff for a declaratory judgment that defendant was not entitled to underinsured motorist coverage. As we have concluded that one of the policy holders was given the opportunity to reject or select differing coverage amounts of underinsured motorist coverage, there are no genuine issues of material fact and plaintiff is entitled to judgment as a matter of law. Accordingly, we affirm the trial court's entry of summary judgment in favor of plaintiff.

## I. Background

On 2 May 2008, plaintiff North Carolina Farm Bureau Mutual Insurance Company filed a declaratory judgment action against Mitchell Drew Jenkins. Plaintiff alleged that on 4 November 2006 defendant was a passenger in his Toyota vehicle, which was driven by his brother, Jamie Matthew Jenkins, when it collided with a vehicle driven by Candice Renee Fore. Defendant was injured in the collision. Plaintiff alleged further that

5. The Jenkins vehicle was covered by a personal auto policy (policy no. APM 4763616) issued by plaintiff to defendant which provided bodily injury liability coverage in the amount of $50,000 per person / $100,000 per accident.

6. On 11/04/2006 Jamie Matthew Jenkins was a named insured of a personal auto policy (policy no. APM 4098068) issued by plaintiff to Jamie Jenkins and his spouse (Sharon D. Jenkins),

which also provided bodily injury liability coverage in the amount of $50,000 per person / $100,000 per accident.

7. Plaintiff has offered to pay to defendant the $50,000 of liability coverage of the policy issued to defendant (APM 4763616) which covered the vehicle involved in the accident. Plaintiff has also offered to pay to defendant the $50,000 of liability coverage of the policy issued to Jamie Jenkins and his spouse (APM 4098068).

8. Defendant contends his damages exceed $100,000 and that he is entitled to receive from plaintiff underinsured motorists (UIM) coverage pursuant to one or both of the Farm Bureau policies stated above.

9. Plaintiff disagrees with defendant's contention and contends that defendant is not entitled to any UIM coverage. The Farm Bureau policy issued to defendant provides UIM coverage in the amount of $50,000 per person /$100,000 per accident but defendant is not entitled to any UIM coverage regarding the 11/04/2006 accident because the limit of liability of the UIM coverage is not greater than the limit of liability of the liability coverage. The Farm Bureau policy issued to Jamie Jenkins and his spouse does not provide any UIM coverage.

Plaintiff requested "a declaratory judgment that defendant is not entitled to any UIM coverage regarding the 11/04/2006 accident in question[.]" On 2 July 2008, defendant answered plaintiff's complaint and counterclaimed requesting, *inter alia*, "[t]he Court adjudge that he is entitled to underinsured coverage at the highest available limit of $1,000,000.00 pursuant to the policies issued by Plaintiff Farm Bureau[.]"

On or about 16 February 2009, defendant filed a motion for summary judgment which stated defendant's argument as to the applicability of UIM coverage of $1,000,000.00 as follows:

The grounds for Defendant's Motion include that there is no genuine issue of material fact that neither Jamie Jenkins nor Sharon Jenkins were provided, pursuant to N.C.G.S. § 20-279.21(b)(4), an opportunity, at any point between the inception of North Carolina Farm Bureau Policy No. APM 4098068 on August 15, 1994, and the date of loss on November 4, 2006, to select uninsured/underinsured motorist coverage limits greater than the liability limits appearing on North Carolina Farm Bureau Policy No.

APM 4098068, and therefore, under N.C.G.S. § 20-279.21(b)(4), Plaintiff, under North Carolina Farm Bureau Policy No. APM 4098068, must afford to Defendant the statutory maximum uninsured/underinsured motorist coverage of $1,000,000.00.

In support, hereof, Defendant shows the court that . . . there is no selection/rejection form for North Carolina Farm Bureau Policy No. APM 4098068, and it further appearing that there is an absence of any evidence establishing the named insureds were provided with an opportunity to select or reject uninsured or combined uninsured/underinsured coverage at limits different than the liability limits[.]

On 6 May 2009, plaintiff filed a motion for summary judgment alleging that "Sharon [Jenkins][1] was offered UIM coverage at the various amounts available up to $1,000,000 and she chose not to purchase UIM coverage." Plaintiff filed several affidavits with its motion. Ms. Sharon Jenkins submitted an affidavit that stated the following:

I chose uninsured motorists coverage in the amount of $50,000 for each person, and $100,000 for each accident. I chose not to purchase underinsured motorists coverage. I cannot remember whether I signed a Selection/Rejection form . . . . It is possible that I signed one. I simply do not remember one way or the other.

I understood then and I understand now that I can purchase uninsured motorists coverage or combined uninsured/underinsured motorists coverage in various amounts up to $1,000,000. I have renewed this same personal auto policy every six months since 1994 and I have never changed my decision to buy uninsured motorists coverage but not underinsured motorists coverage.

Various employees of plaintiff also submitted affidavits regarding the company's procedures and routine practices. On 18 June 2009, the trial court allowed plaintiff's motion for summary judgment, denied defendant's motion for summary judgment, and dismissed defendant's counterclaim with prejudice determining "that defendant is not entitled to any UIM coverage regarding the 11/04/2006 accident[.]" Defendant appeals.

---

1. According to Sharon D. Jenkins's affidavit, her name was Sharon Boyd until "sometime in 1994[.]" She married Jamie M. Jenkins in 1993 and later changed her last name.

## II. Summary Judgment

Defendant contends that the trial court erred in allowing summary judgment in favor of plaintiff because *Williams v. Nationwide,* 174 N.C. App. 601, 621 S.E.2d 644 (2005) mandates that "Defendant is entitled to a judgment as a matter of law declaring that North Carolina Farm Bureau Mutual Insurance Company Policy APM4098068 provides UIM coverage with limits of $1,000,000 per person and $1,000,000 per accident[.]" (Original in all caps.) We disagree.

Our standard of review when the trial court allows an order for summary judgment "is *de novo,* and we view the evidence in the light most favorable to the non-movant." *Scott & Jones v. Carlton Ins. Agency Inc.,* —— N.C. App. ——, ——, 677 S.E.2d 848, 850 (2009) (citation omitted). The standard of review for an order allowing

> a motion for summary judgment requires a two-part analysis of whether, (1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law.

*Von Viczay v. Thoms,* 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (citation and quotation marks omitted), *aff'd per curiam,* 353 N.C. 445, 545 S.E.2d 210 (2001).

Our Court recently decided the case of *Nationwide Mut. Ins. Co. v. Burgdoff,* —— N.C. App. ——, —— S.E.2d (Sept. 7, 2010) (No. COA09-1117). In *Burgdoff,* this Court analyzed previous cases, including *Williams,* and concluded that "the relevant inquiry . . . is whether defedants were given *the opportunity* to reject or select different UIM coverage limits." *Id.* at ——, —— S.E.2d at —— (emphasis in original). The facts in *Burgdoff* are as follows:

> Donald ("Mr. Burgdoff") and Cynthia ("Mrs. Burgdoff") Burgdoff, both individually and as co-executors of the Estate of Patricia Eleanor Burgdoff (collectively "defendants"), appeal an order granting summary judgment to Nationwide Mutual Insurance Company ("plaintiff"). . . .

In October 1995, Mrs. Burgdoff met with plaintiff's licensed insurance agent Susan Bare ("Ms. Bare"), in order to obtain automobile insurance. Mrs. Burgdoff and Ms. Bare discussed the types of coverages available. On the basis of these discussions, Mrs. Burgdoff completed an "Automobile Insurance Application," which

requested, *inter alia*, bodily injury insurance coverage for uninsured and underinsured motorists ("UM/UIM"), in the maximum amount of $100,000 per person and $300,000 per accident ("100/300"). On 4 October 1995, Mrs. Burgdoff signed a "Personal Auto Closing Statement" ("the closing statement"). However, Mrs. Burgdoff did not execute a North Carolina Rate Bureau UM/UIM Selection/Rejection Form ("selection/rejection form") when she signed the closing statement. Defendants were then issued an automobile insurance policy by plaintiff, effective 4 October 1995 ("the Burgdoff policy"). The Burgdoff policy, with its corresponding coverage limits, has been repeatedly renewed by defendants and was still in effect at the time of the filing of this action.

On 8 December 2006, defendants' eight-year-old daughter, Patricia Eleanor Burgdoff ("Patricia"), was killed in an automobile accident. As a result of the accident, defendants filed a wrongful death action against Ross Edward Neese ("Neese") in Rowan County Superior Court. At the time of the accident, Neese had a liability insurance policy in effect with North Carolina Farm Bureau Insurance Group ("the Neese policy"). The Neese policy contained a personal liability limit of $100,000 per person.

Because defendants sought damages from Neese in excess of the $100,000 personal liability limit contained in the Neese policy, they notified plaintiff of their intention to seek recovery under the UIM provision of the Burgdoff policy. . . .

On 24 September 2009, plaintiff filed a "Complaint for Declaratory Judgment" under Rule 57 of the North Carolina Rules of Civil Procedure in Rowan County Superior Court. Plaintiff sought a determination of the amount of UIM coverage available to defendants under the Burgdoff policy. Plaintiff and defendants each filed motions for summary judgment. After a hearing on 14 May 2009, the trial court granted summary judgment to plaintiff and issued a Declaration of Judgment that defendants were entitled to UM/UIM coverage in the amount of 100/300. Defendants appeal.

*Id.* at ——, S.E.2d at ——.

N.C. Gen. Stat. § 20-279.21(b)(4), the relevant statute here and in *Burgdoff*, provided:

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the cov-

erage. An insured named in the policy may select different coverage limits as provided in this subdivision. If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy. Once the option to reject underinsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless a named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured or the failure to select or reject is valid and binding on all insureds and vehicles under the policy.

Rejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau shall be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.

N.C. Gen. Stat. § 20-279.21(b)(4) (Nov. 1993).

In *Burgdoff*, this Court went on to consider the Supreme Court case of *State Farm Mut. Auto. Ins. Co. v. Fortin*, 350 N.C. 264, 513 S.E.2d 782 (1999) and *Williams* and determined that

[t]he *per se* rule suggested by defendants, that the *Williams* analysis must apply whenever an insurer does not produce a valid selection/rejection form, cannot be reconciled with our Supreme Court's holding in *Fortin*. The facts in *Fortin* clearly indicate that the insured, upon renewal, was not provided with the proper North Carolina Rate Bureau selection/rejection form, but this failure of the insurance company to provide the form did not result in an increase in UIM coverage beyond the statutory limits of N.C. Gen. Stat. § 20-279.21(b)(4). Along these same lines, the deciding factor for the *Williams* Court was not that the insured was not provided with the proper selection/rejection form; instead, the Court emphasized that the insured was not provided with any opportunity at all to even consider UIM coverage. . . . Therefore, the relevant inquiry in determining whether *Williams* applies is whether defendants were given *the opportunity* to reject or select different UIM coverage limits.

*Id.* at ——, —— S.E.2d at —— (emphasis in original). Our Court in *Burgdoff* went on to reverse the summary judgment order because there was "a genuine issue of material fact as to whether plaintiff provided defendants with the opportunity to reject or select different UIM coverage limits[.]" *Id.* at ——, —— S.E.2d at ——. The evidence presented by the plaintiffs showed that the defendants had been given an "opportunity to reject or select different UIM coverage limits." *Id.* at ——, —— S.E.2d at ——. However, the defendants' forecast of evidence showed the defendants "were not informed that they could select an amount of UIM coverage that was different from the amount of liability coverage." *Id.* at ——, —— S.E.2d at ——. Thus, there was "a genuine issue of material fact as to whether plaintiff provided defendants with the opportunity to reject or select different UIM coverage limits[.]" *Id.* at ——, —— S.E.2d at ——.

Based upon *Burgdoff*, the dispositive issue before us is whether there is a genuine issue of material fact as to "whether defendants were given the opportunity to reject or select different UIM coverage limits." *Id.* at ——, —— S.E.2d at ——. Defendant dedicates a large portion of his brief to argument regarding why plaintiff's employee's affidavits regarding "routine business practices" should not be considered competent evidence; however, even if we disregard plaintiff's employee's affidavits, the affidavit of Ms. Jenkins, the co-policy holder, is dispositive of the question at hand. Ms. Jenkins stated in her affidavit, "I chose not to purchase underinsured motorists coverage" and

> I understood then and I understand now that I can purchase uninsured motorists coverage or combined uninsured/underinsured motorists coverage in various amounts up to $1,000,000. I have renewed this same personal auto policy every six months since 1994 and I have never changed my decision to buy uninsured motorists coverage but not underinsured motorists coverage.

This evidence alone establishes Ms. Jenkins was "given the opportunity to reject or select different UIM coverage limits." *Id.* at ——, —— S.E.2d at ——. Her affidavit shows that she was aware of her options as to uninsured/underinsured motorist coverage and that she made a conscious decision not to purchase UIM coverage. Accordingly, *Williams* does not control this case, *see id.* at ——, —— S.E.2d at ——, and summary judgment was properly allowed in favor of plaintiff. Despite the lack of the selection/rejection form, there is no dispute that Ms. Jenkins had the opportunity to reject or select different UIM coverage limits, so plaintiff is entitled to the relief requested, "a

declaratory judgment that defendant is not entitled to any UIM coverage regarding the 11/04/2006 accident[.]"

### III. Conclusion

As we conclude that the co-policy holder was provided "the opportunity to reject or select different UIM coverage limits[,]" *id.* at ——, —— S.E.2d at ——, we affirm the order of the trial court allowing summary judgment in favor of plaintiff.

AFFIRMED.

Judges McGEE and HUNTER, JR., Robert N. concur.