**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1021**

PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY,

Plaintiff - Appellee,

v.

WILLIAM W. MCLEOD, Administrator of the Estate of
   Annie Morgan McLeod; KARON MCLEOD,

Defendants - Appellants.

Appeal from the United States District Court for the District of
North Carolina, at Wilmington.   David W. Daniel, Magistrate
Judge.  (7:08-cv-00161-DAN)

Submitted:  June 18, 2012          Decided:  July 23, 2012

Before GREGORY, AGEE and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Maynard M. Brown, JOHNSON & LAMBETH, Wilmington, North Carolina,
for Appellants.  Glenn C. Raynor, YOUNG MOORE AND HENDERSON, PA,
Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

I.

Annie McLeod, the daughter of Appellees William and Karen McLeod ("Mr. and Mrs. McLeod"), sustained fatal injuries in March of 2008 when her car was struck by another vehicle. Because the driver of the other vehicle, Kevin Cardwell, did not have liability coverage that applied to the accident, he qualifies as an "uninsured motorist" under North Carolina law. See N.C. GEN. STAT. § 20-279.21(b)(3). Mrs. McLeod was the named insured of a policy underwritten by Progressive Southeastern Insurance Company. The policy provides combined uninsured ("UM") and underinsured ("UIM") bodily injury coverage limits of $50,000 per accident and $100,000 per accident, respectively.

At the time of the accident, North Carolina law required that an insurance carrier provide an insured an opportunity to select or reject UM/UIM coverage in an amount greater than $50,000 per person and $100,000 per accident; it further required that the insurance company document that opportunity via a form promulgated by the North Carolina Rate Bureau, which was to be signed by the insured. N.C. GEN. STAT. §§ 20-279.21(b)(3) & (4) (2000). Progressive cannot locate a signed copy of that form for Mrs. McLeod's policy.

2

Progressive filed this action pursuant to the federal court's diversity jurisdiction seeking a declaratory judgment that it is required to pay only up to the combined $50,000/$100,000 UM/UIM coverage provided by the policy. The McLeods assert in their answer that Progressive must provide coverage up to $1,000,000. They rely on a decision by the North Carolina Court of Appeals, Williams v. Nationwide Mut. Ins. Co., 621 S.E.2d 644 (N.C. Ct. App. 2005), where that court held that a "total failure" to provide an insured with an opportunity to select or reject UIM coverage of a certain amount would compel a court to declare that the UIM coverage limit must be raised to $1,000,000, the maximum amount permissible under state law. Id. at 647. After a bench trial, the magistrate judge rejected this interpretation of North Carolina law, holding that an earlier decision by the state's Supreme Court, Nationwide Mutual Insurance Co. v. Fortin, 513 S.E.2d 782 (N.C. 1999), is inconsistent with Williams. It held that Progressive is only obligated to provide UM coverage up to the bodily injury limits of the policy, and entered a judgment in Progressive's favor. The McLeods timely appeal.

## II.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials

3

before the court and argument would not aid the decisional process. We hold that there was no "total failure" by Progressive to provide Mrs. McLeod with the opportunity to reject or select UM coverage and therefore affirm the magistrate judge's decision.

A.

Judgments following a bench trial are reviewed under a mixed standard: "[F]actual findings may be reversed only if clearly erroneous, while conclusions of law . . . are examined de novo." Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005).

The legal issue raised in this appeal concerns the proper interpretation of North Carolina law. While sitting in diversity, the federal courts are not bound by the precedent of intermediate appellate courts, but must adjudicate legal questions consistent with the precedent of the state's highest court and, if no such precedent exists, predict how the state's highest court would rule if presented with the issue. Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999). At the same time, this Court has held that "[a]n opinion of an intermediate appellate court is persuasive in situations where the highest court of the state has not spoken," although the intermediate court's opinion "does not prevail where the federal court is

4

convinced that the highest court of the state would rule to the contrary." <u>Sanderson v. Rice</u>, 777 F.2d 902, 905 (4th Cir. 1985).

B.

At the time the McLeods' policy was issued, North Carolina law provided that UM coverage is "not to be less than the financial responsibility amounts for bodily injuries set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000), as selected by the policy owner." N.C. GEN. STAT. § 20-279.21(b)(3) (2002). The law also permitted an insured to reject this coverage. <u>Id.</u> However, "rejection of or selection of different coverage limits for uninsured motorist coverages . . . shall be made in writing by a named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance." <u>Id.</u> Finally, "[i]f the named insured does not reject uninsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." N.C. GEN. STAT. § 20-279.21(b)(3) (2002).[*]

---

[*] The purpose of this rather tangled series of legislative pronouncements is nicely summarized in <u>Hendrickson v. Lee</u>, 459 S.E.2d 275, 279 (N.C. Ct. App. 1995): "Thus, although an
(Continued)

5

In this case the parties agree that Progressive was obligated to give Mrs. McLeod the option of rejecting or selecting additional UM coverage. Br. of Appellee at 3-5. However, Progressive cannot produce a copy of the Bureau-approved document signed by Mrs. McLeod. Because the burden of proof to demonstrate that an insured signed the form rests with the insurance carrier, Hendrickson v. Lee, 459 S.E.2d 275, 279 (N.C. App. 1995), Progressive does not dispute the magistrate judge's finding that no selection/rejection form was ever signed by Mrs. McLeod. Thus the only issue in dispute is the level of UM coverage provided by North Carolina law in cases where the insured failed to comply with § 20-279.21(b)(3).

This dispute centers on the proper interpretation of two seemingly conflicting opinions: an earlier decision from the North Carolina Supreme Court and a later one issued by the North Carolina Court of Appeals. In State Farm v. Fortin, North Carolina's Supreme Court held that the insurer failed to provide an adequate opportunity for its insured to reject or select additional UIM coverage. 513 S.E.2d at 784. It then turned to address the amount of UIM coverage provided by the policy given

insured is not legally obligated to contract for [UM] coverage in any amount, [UM] coverage equal to a policy's liability limits will be assumed unless the insured validly rejects that amount of coverage." Id. (citations omitted).

6

this failure and held, pursuant to the plain language of the statute, that "[i]f the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of . . . coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." Id. at 786. In Williams v. Nationwide Mutual Insurance Co., the North Carolina Court of Appeals considered a fact pattern highly analogous to Fortin. There, the insurer stipulated that it had not provided the insured with an opportunity to reject or select additional UIM coverage. 621 S.E.2d at 645. Rather than applying the straightforward language of § 20-279.21(b)(3), however, the Williams Court created a new rule out of whole cloth, holding that because there was a "total failure" to provide the insured with the opportunity to select coverage, "the insured was entitled to the highest available limit of UIM coverage of $1,000,000." Id. at 647.

It is an open question whether the Williams rule is good law in North Carolina. On the one hand, § 20-279.21 is clear on its face that the Fortin rule governs all cases where there is a failure to provide the opportunity to select coverage -- the Fortin decision itself noted the statute was unambiguous. Fortin, 513 S.E.2d at 785-86. Moreover, Fortin considered and rejected an appellate court decision -- interpreting an earlier

7

version of the same statute -- that held the $1,000,000 limit applied. Id. at 784-85. On the other hand, it is logically possible to interpret Williams and Fortin so that they are consistent: in Fortin the insured provided an opportunity to select coverage, but failed to do so in the manner dictated by the statute. Id. at 783. In Williams, by contrast, the parties stipulated that "[n]either [of the insureds] were offered by Nationwide or its authorized agent an opportunity to select or reject UIM limits . . . ." Williams, 621 S.E.2d at 645. Further, the Williams court noted a policy concern that would justify this reading: if the remedial section of the statute applied in "total failure" cases, "insurers would be permitted to establish default UIM coverage simply by failing to provide the proper rejection/selection forms to their clients." Id. at 647.

Unfortunately, while the court of appeals has interpreted the Williams decision, see, e.g., Nationwide Property & Casualty Ins. Co. v. Martinson, 701 S.E.2d 390 (N.C. Ct. App. 2010); N.C. Farm Bureau Mut. Ins. Co. v. Jenkins, 700 S.E.2d 434 (N.C. Ct. App. 2010), the North Carolina Supreme Court has not taken up the issue. Thus there is no definitive statement on this area of law that binds this Court. Rather than resolving this difficult state-law question one way or the

other, we affirm the magistrate judge's decision on alternative grounds.

## C.

Assuming <u>arguendo</u> that the <u>Williams</u> rule is still viable, Progressive did not commit a total failure in providing Mrs. McLeod with the chance to select UM coverage. We therefore affirm the district court.

The magistrate judge made several findings of fact supporting this conclusion. The court first noted that when Mrs. McLeod signed the insurance policy, she acknowledged and agreed to a statement which read in part, "Uninsured/Underinsured Motorists Coverage, and the applicable limits of these coverages were explained to me, and I have selected the limits shown." The court further found that when she was purchasing car insurance she wished to "keep costs down by choosing the lowest required coverage and understood that greater combined UM/UIM coverage limits would have resulted in higher premiums." Finally, the court determined that "subsequent to the accident, the McLeods continued to renew the Policy at the same policy limits . . . despite being on notice since at least the time that the complaint was filed in this action of their ability to select or reject different coverage limits." These facts, taken together, lead us to conclude that

9

the Williams "total failure" rule is inapplicable to this case and that the magistrate did not err in holding, consistent with Fortin, that the McLeods are entitled only to coverage in an amount "equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." Fortin, 513 S.E.2d at 786.

## III.

For the reasons discussed above, we affirm the magistrate judge's decision.

AFFIRMED