ERIE INSURANCE EXCHANGE, Plaintiff v. ROBBIN D. MILLER, OLLIE K. MILLER, and UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendants

No. COA02-699

(Filed 2 September 2003)

**Insurance— underinsured motorist—rejection—insurance company form not sufficient**

There was not a valid rejection of underinsured motorist coverage where the purported rejection used the words of the form promulgated by the North Carolina Rate Bureau, but included them in a box on petitioner's own form. The plain language of

---

**ERIE INS. EXCH. v. MILLER**

[160 N.C. App. 217 (2003)]

N.C.G.S. § 20-279.21 requires that the rejection be on a form promulgated by the Rate Bureau; moreover the typeface on petitioner's form did not comply with the Readable Insurance Policies Act.

Appeal by defendants Robbin D. Miller and Ollie K. Miller from judgment entered 21 February 2002 by Judge A. Moses Massey in Guilford County Superior Court. Heard in the Court of Appeals 17 February 2003.

*Bailey & Thomas, P.A., by John R. Fonda, for plaintiff-appellee.*

*Donaldson & Black, P.A., by Arthur J. Donaldson and Rachel Scott Decker, for defendants-appellants.*

GEER, Judge.

Defendants Robbin D. Miller and Ollie K. Miller, who purchased an automobile liability insurance policy from plaintiff Erie Insurance Exchange ("Erie"), have appealed from the trial court's order granting Erie's motion for summary judgment and declaring that Millers' written rejection of underinsured motorist coverage was valid and enforceable. The question presented by this appeal is whether Erie's inclusion in its insurance application form of a section measuring 2 1/2 by 4 inches (in apparently 5.5 point type) allowing for selection and rejection of uninsured motorist ("UM") and underinsured motorist ("UIM") coverage complied with N.C. Gen. Stat. § 20-279.21(b)(4) (2001), requiring all rejections to be "in writing by the named insured on a form promulgated by the [North Carolina Rate] Bureau and approved by the Commissioner of Insurance." Because the North Carolina Rate Bureau's form measures 8 1/2 by 11 inches and is in 12 point type and because the record contains no evidence that either the Rate Bureau or the Commissioner of Insurance has approved Erie's approach, we reverse.

On 12 January 1998, defendant Robbin Miller signed an Erie private passenger automobile application. The application was a two-page form with numbered boxes seeking various information, including personal data about the Millers, the levels of coverage that they wanted, the premiums that would be charged, and their accident history. Box 17, on the second page of the application, was entitled "Selection/Rejection Form Uninsured Motorists Coverage Combined Uninsured/Underinsured Motorists Coverage."

ERIE INS. EXCH. v. MILLER

[160 N.C. App. 217 (2003)]

Although Robbin Miller was given the opportunity, he did not review the application and did not fill in any of the blanks in the form. He had previously supplied the information necessary to complete the application to the insurance agent. He relied upon her and simply signed next to three checkmarks that had already been placed on the application. With respect to box 17, he signed that he was choosing to reject combined UM/UIM coverage and selecting UM coverage "at limits of Bodily Injury 100/300 Property Damage 100." At the time, Miller thought that UM benefits and UIM benefits were the same thing.

Erie issued to the Millers a policy of motor vehicle liability insurance with coverage limits in the amount of $100,000.00 per person/$300,000.00 per accident. The policy also indicated that it provided for UM benefits in the same amounts.

On 27 March 1998, the Millers were involved in a motor vehicle accident that the parties stipulated, for purposes of summary judgment, was caused by Brentwood Thomas. Thomas' insurer tendered its policy limits with the result that the Millers each received $33,333.33.

The Millers then made a demand on Erie for UIM benefits. Based on box 17 of the application, Erie denied that the policy provided UIM benefits and brought a declaratory judgment action, seeking a declaration that no UIM coverage existed under its policy for the injuries sustained by the Millers in the 27 March 1998 accident. The Millers filed a counterclaim seeking a declaratory judgment that plaintiff is obligated to provide UIM coverage.

Both plaintiff and defendants subsequently filed motions for summary judgment. Based on the parties' stipulated facts, the superior court concluded as a matter of law that defendant Robbin Miller's rejection of UIM coverage and selection of UM coverage was valid and enforceable. The court, therefore, entered judgment declaring that no UIM coverage existed under the Erie policy for the 27 March 1998 accident.

---

In North Carolina, a motor vehicle liability insurance policy is required to provide UM and UIM coverage unless the insured has rejected that coverage. N.C. Gen. Stat. § 20-279.21 (2001). Absent a valid rejection, a policy is deemed to include such coverage. *State Farm Mut. Auto. Ins. Co. v. Fortin,* 350 N.C. 264, 269, 513 S.E.2d 782, 784 (1999).

**ERIE INS. EXCH. v. MILLER**

[160 N.C. App. 217 (2003)]

This appeal requires us to consider what constitutes a valid rejection of UIM coverage. N.C. Gen. Stat. § 20-279.21(b)(4) (emphasis added) is the controlling statute and provides: "Rejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau shall be made in writing by the named insured *on a form promulgated by the Bureau and approved by the Commissioner of Insurance.*"

The parties do not dispute that Robbin Miller rejected combined UM/UIM coverage in writing. They focus their arguments instead on whether that rejection was "on a form promulgated by the Bureau and approved by the Commissioner of Insurance." We hold that it was not.

In response to N.C. Gen. Stat. § 20-279.21(b), as amended in 1991, the Rate Bureau promulgated and the Commissioner approved two revised forms for selection and rejection of UM or combined UM/UIM coverage: NC 01 85 (Ed. 7-91) for new policies and NC 01 86 (Ed. 7-91) for renewal policies. *Fortin*, 350 N.C. at 269-70, 513 S.E.2d at 785. Since the Millers were entering into a new policy, their rejection of combined UM/UIM coverage was required to be on form NC 01 85 (Ed. 7-91).

Form NC 01 85 (Ed. 7-91) is a one-page, 8 1/2 by 11 inch, form printed in 12 point type with the text measuring 7 by 10 inches. The rejection at issue here has virtually identical language to Form NC 01 85 (Ed. 7-91), substituting only the word "Erie" for "company" and "insured" for "named insured." Erie, however, shrunk the promulgated form and then included it as box 17 in another form, its application. The text of box 17 is 2 1/2 by 4 inches and it appears to be printed in 5.5 point type.

Erie first contends that its rejection complies with N.C. Gen. Stat. § 20-279.21 because it uses the same words as the promulgated form and because the statute does not require that the rejection be in a separate document. This argument disregards the plain language of the statute. The statute requires that the rejection be "on a form promulgated by the Bureau." The Bureau created and the Commissioner of Insurance approved form NC 01 85 (Ed. 7-91). The Millers' rejection is not on the form promulgated by the Bureau, but rather is included in box 17 on an unrelated application form created by Erie. Nothing in the statute or in any administrative ruling authorizes an insurer to merge an unrelated form with the approved Rate Bureau selection/rejection form.

## ERIE INS. EXCH. v. MILLER

Erie references a leading insurance treatise in arguing that it is appropriate to include a rejection as part of an application form. *See* 9 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 122:57, at 122-108 (1997) ("Form rejections are often included in the application for insurance."). Erie has, however, overlooked the fact that North Carolina's statute, requiring insurers to use a specified form, is unusual. *See* 2 Irvin E. Schermer, *Automobile Liability Insurance 3d* § 36.04, at 36-6 (1995) ("The rejection provisions of the statutes contain numerous dissimilarities of structure and detail relative to . . . the nature and form of rejection . . . ."). Other states requiring that the rejection be in writing either do not specify what form the writing must take or provide that the rejection is to be on a form furnished *by the insurer. See, e.g.*, Ark. Code Ann. § 23-89-403 (Supp. 2003) (UM coverage not required when insured "has rejected the coverage in writing"); Del. Code Ann. tit. 18, § 3902(a)(1) (1999) (coverage must be rejected "on a form furnished by the insurer"). The authors of *Couch on Insurance* point out that "[w]here the use of the statutory form is expressly required, and no provision is made for alteration, addition, or modification, strict adherence with the form is required." 1 Russ & Segalla, *supra*, § 17.13, at 17-21 (1997). Because North Carolina by statute requires the use of a particular form and neither the statute nor any administrative ruling by the Commissioner of Insurance has provided for modification of the format of that form, Erie was required to strictly adhere to the required format.

This requirement of strict adherence has already been adopted by our Supreme Court. In *Fortin*, the insurer used a renewal form that was virtually identical with NC 01 86 (Ed. 7-91); it added only a single line specifying the insured's current UM coverage limits. As Justice Parker stated in her dissent, "[i]n my view, the State Farm form . . . included the exact same language as NC Form 01 86 . . . ." 350 N.C. at 275, 513 S.E.2d at 788. Nevertheless, the majority concluded "that the State Farm version of renewal form NC0186 [sic] that [the insured] executed in January 1992 was not the 'form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.' " *Id.* at 269, 513 S.E.2d at 784. The Court continued: "We note further that the statute specifically provides that rejection 'shall be made in writing' on the approved form." *Id.*

Prior decisions of this Court have reached a similar conclusion. In *Hendrickson v. Lee*, 119 N.C. App. 444, 455, 459 S.E.2d 275, 281 (1995), the insurer argued, as Erie does here, that "use of the precise form promulgated by the Rate Bureau was not required." This Court

disagreed, noting that the statute was "concerned with avoiding confusion and ambiguity through the use of a single standard and approved form." *Id.* at 456, 459 S.E.2d at 282. Likewise, in *Sanders v. American Spirit Ins. Co.*, 135 N.C. App. 178, 186, 519 S.E.2d 323, 328 (1999), because of the need for a single standard form, this Court found a rejection of UIM coverage ineffective when the form, although otherwise identical with the Rate Bureau form, omitted the word "combined." Only when issuing insurance policies outside the jurisdiction of the Rate Bureau may the insurer "permissibly use[] its own form for selection or rejection of underinsured motorist coverage." *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 325, 524 S.E.2d 386, 389, *aff'd in part on other grounds*, 353 N.C. 240, 539 S.E.2d 274 (2000).

In arguing that its "form" is identical with the Rate Bureau form, Erie points to the fact that the statute does not include any size requirements for the form. There was, however, no need for the General Assembly to do so. It authorized the Rate Bureau to design the form subject to the approval of the Commissioner. It was, therefore, up to the Rate Bureau to determine the proper print size and overall size of the form. When it promulgated its form, it was Erie's responsibility to print rejection/selection forms that matched that form.

In addition, the Readable Insurance Policies Act, enacted in 1979, mandated long ago that "[a]ll insurers are required by this Article to use policy and contract forms and, where applicable, benefit booklets . . . that are printed in a legible format." N.C. Gen. Stat. § 58-38-5 (2001). More specifically, N.C. Gen. Stat. § 58-38-20(a) (2001) requires that all insurance policies and contracts providing private passenger nonfleet motor vehicle insurance "must be printed in a typeface at least as large as 10 point modern type, one point leaded . . . ."

Erie relies primarily on an unpublished 16 March 1999 decision, *Erie Ins. Exchange v. Bordeaux*, COA98-773 (N.C. App. Mar. 1999). Unpublished decisions are not, however, controlling authority. N.C.R. App. P. 30(e). That decision did not have the benefit of *Fortin* or *Sanders*, which were both decided several months later and mandate use of the single, standard form promulgated by the Rate Bureau. Moreover, the unpublished decision assumed that "[o]ur statutes do not require the selection/rejection form to contain specific font sizes . . . ." Apparently, the parties did not direct the Court's attention to N.C. Gen. Stat. § 58-38-20 with its 10-point limitation.

Erie also points to *Blackburn v. State Farm Mut. Auto. Ins. Co.*, 141 N.C. App. 655, 540 S.E.2d 63 (2000), *disc. review denied*, 353 N.C. 369, 547 S.E.2d 409 (2001), as support for its position. In *Blackburn*, however, the insurer had added to the standard Rate Bureau form language further explaining UM and UIM coverage. In concluding that this rejection/selection form was valid despite the additional explanatory language, the court relied upon the fact that "the Rate Bureau and Department of Insurance expressed in 1991 their approval of a selection/rejection form that '[a]dd[s] explanations of [UM] and/or combined [UM/UIM] coverages' which otherwise complies with the form promulgated by the Rate Bureau and approved by the Department of Insurance." *Id.* at 657, 540 S.E.2d at 64. The Court concluded that the additional language "comports with the authorization given by the Rate Bureau and the Department of Insurance. Therefore, we conclude as a matter of law that this additional language does not render invalid the selection/rejection form executed by [the insured.]" *Id.* at 659, 540 S.E.2d at 65.

Erie bore the burden of establishing the validity of the Millers' rejection of coverage. *Hendrickson*, 119 N.C. App. at 450, 459 S.E.2d at 279. Here, Erie offered no evidence that the Rate Bureau or the Commissioner of Insurance has authorized it to include the rejection/selection form in its application or to print it in tiny type. As Erie has failed to show that its modification of the Rate Bureau form was authorized or approved, it has failed to establish that the Millers validly rejected UIM coverage.

Because there was no valid rejection of UIM coverage, UIM coverage was included in the policy in accordance with the provisions of N.C. Gen. Stat. § 20-279.21(b)(4) as amended in 1991. The parties have not addressed the amount of that coverage and we leave that determination for the trial court.

Reversed.

Chief Judge EAGLES and Judge MARTIN concur.