IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 12-0688

_____

**FILED**

**October 7, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DANIEL W. THOMAS, ANGELA Y. THOMAS, individually and ANGELA Y.
THOMAS, as mother and next friend of LUKE D. THOMAS, an infant,
Petitioners

v.

WILLIAM RAY MCDERMITT and STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Respondent

_____

Certified Question from the Circuit Court of Mason County
The Honorable David W. Nibert, Judge
Civil Action No. 11-C-81-N

CERTIFIED QUESTION ANSWERED
_____

Submitted: September 11, 2013
Filed: October 7, 2013

Brent K. Kesner, Esq.
Kesner & Kesner, PLLC
Charleston, West Virginia
And
Anthony J. Majestro, Esq.
Powell & Majestro, PLLC
Charleston, West Virginia
Attorneys for Petitioners

R. Carter Elkins, Esq.
Campbell Woods, PLLC
Huntington, West Virginia          .
Attorney for Respondents

Andrew R. Pauley, Esq.
Office of the West Virginia Insurance
Commissioner
Charleston, West Virginia
Attorney for Amicus Curiae
Michael D. Riley, West Virginia
Insurance Commissioner

Jill C. Rice, Esq.
Mychal S. Schulz, Esq.
Dinsmore & Shohl, LLP
Charleston, West Virginia
Attorney for Amicus Curiae
West Virginia Insurance Federation

JUSTICE WORKMAN delivered the Opinion of the Court

JUSTICE DAVIS dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1. "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. Pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

2. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

3. "Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed." Syl. Pt. 1, *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987).

4. "When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." Syl. Pt. 2, *Bias v. Nationwide Mut. Ins. Co.*,179 W.Va. 125, 365 S.E.2d 789 (1987).

i

5. "'"Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." Syllabus point 7, *Evans v. Hutchinson*, [158] W. Va. [359], 214 S.E.2d 453 (1975).' Syllabus point 8, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. Pt. 3, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999).

6. "Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syl. Pt. 4, *Sec. Nat'l Bank & Trust Co. v. First W. Va. Bancorp, Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981).

7. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999).

8. "'The common law, if not repugnant of the Constitution of this State, continues as the law of this State unless it is altered or changed by the Legislature. Article VIII, Section 21 of the Constitution of West Virginia; Chapter 2, Article 1, Section 1, of the Code of West Virginia.' Syllabus Point 3, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d

ii

605 (1962)." Syl. Pt. 3, *State ex rel. Van Nguyen v. Berger*, 199 W.Va. 71, 483 S.E.2d 71 (1996).

9. ""The common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested." *Shifflette v. Lilly*, 130 W.Va. 297, 43 S.E.2d 289 [1947].' Syllabus Point 4, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962)." Syl. Pt. 4, *State ex rel. Van Nguyen v. Berger*, 199 W.Va. 71, 483 S.E.2d 71 (1996).

10. "'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board*, 171 W.Va. 445, 300 S.E.2d 86 (1982)." Syl. Pt. 1, *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997).

11. "As a general rule, where a statute directs certain proceedings to be done in a certain way, and the form does not appear essential to the judicial mind, the law will be regarded as directory, and the proceedings under it will be held valid, though the command of the statute as to form has not been strictly obeyed, the manner not being the essence of the thing to be done." Syl. Pt. 11, *Calwell's Ex'r v. Prindle's Adm'r,* 19 W.Va. 604, 1882 WL 3581 (1882).

12. An insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to West Virginia Code § 33-6-31d (2011) results in the loss of the statutory presumption and a reversion to the standards enunciated in *Bias v. Nationwide Mutual Insurance Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987).

Workman, Justice:

The Circuit Court of Mason County, West Virginia has certified the following question to this Court relating to a civil action filed as a result of injuries sustained in an automobile accident:

> Whether an insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to W. Va. Code § 33-6-31d results in underinsured motorists coverage being added to the policy as a matter of law in the amount the insurer was required to offer or merely results in the loss of the statutory presumption and a reversion to the lower standards expressed in *Bias*, which existed at common law prior to the enactment of W. Va. Code § 33-6-31d [2011].

The circuit court answered the certified question by finding "that an insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to W. Va. Code § 33-6-31d results in underinsured motorists coverage being added to the policy as a matter of law. . . ." Based upon this Court's thorough evaluation of the briefs, arguments of the parties,[1] the record provided to this Court, and applicable precedent, this Court answers the certified question as follows: An insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to West Virginia Code § 33-6-31d

---

[1]Also appearing before the Court in this proceeding are two Amici Curiae who support State Farm's position in this case: West Virginia Insurance Federation and West Virginia Insurance Commissioner. This Court expresses its appreciation for the appearance of these Amici Curiae and has considered their arguments in conjunction with those of the parties herein.

1

(2011) results in the loss of the statutory presumption and a reversion to the standards enunciated in *Bias v. Nationwide Mutual Insurance Co.*, 179 W. Va. 125, 365 S.E.2d 789 (1987).

## I. Factual and Procedural History

On May 4, 2007, Angela Thomas visited an agent for State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") in Point Pleasant, West Virginia. Mrs. Thomas purchased a liability policy from State Farm which provided insurance coverage limits of $100,000 per person, $300,000 per occurrence for bodily injuries. The agent also offered Ms. Thomas underinsured motorist (hereinafter "UIM") coverage and explained the purpose of UIM coverage, the limits available for purchase, and the cost of each available limit.[2] Mrs. Thomas declined to purchase UIM coverage and signed a form indicating (1) she read and understood the notice regarding coverage, (2) she understood UIM coverage, and (3) she was exercising her right to reject such coverage.

On August 16, 2009, Mrs. Thomas, her husband Daniel Thomas, and their son, Luke Thomas, were involved in a motor vehicle accident in which William Ray McDermitt negligently crossed the center line and collided with the Thomas vehicle. All three members of the Thomas family sustained serious injuries in the accident. Because the injuries

---

[2]The agent recommended that Mrs. Thomas purchase UIM coverage at limits of $100,000 per person, $300,000 per occurrence, and $50,000 for property damage.

sustained by the Thomas family exceeded the available liability coverage under Mr. McDermitt's automobile liability policy, the Thomas family (hereinafter "petitioners") filed an underinsured motorist claim with their insurer, State Farm, despite Mrs. Thomas' purported rejection of such coverage in May 2007.

Based upon the absence of underinsurance coverage in the petitioners' policy, State Farm denied coverage for this automobile accident. In August 2011, the petitioners filed a civil action against Mr. McDermitt and State Farm, alleging that: (1) they were injured as a result of Mr. McDermitt's negligence; (2) Mr. McDermitt was an underinsured motorist; (3) the State Farm policy must be reformed to include UIM coverage; and (4) State Farm's refusal to provide UIM benefits constituted a breach of the insurance contract. The petitioners asserted that a "knowing and intelligent" waiver of underinsurance coverage had not occurred.

On April 24, 2012, the circuit court granted the petitioners' motion for partial summary judgment, concluding that State Farm's UIM selection/rejection form did not precisely comply with the Insurance Commissioner's prescribed form. The parties agree that State Farm's underinsurance offer/rejection form, signed by Mrs. Thomas, did include all the elements required by the Insurance Commissioner. The only difference between State Farm's form and the Insurance Commissioner's prescribed form is State Farm's inclusion

3

of *additional* elements that arguably render the form difficult to understand and more complicated than necessary. The forms for rejection of underinsured and uninsured motorist coverage signed by Mrs. Thomas, for instance, contain seven columns of information concerning pricing of coverage in differing amounts to be selected by the insured. The Insurance Commissioner's prescribed forms contain only four columns of optional coverage choices available to an insured.[3]

The circuit court certified the above-quoted question to this Court pursuant to West Virginia Code §58-5-2 (2012).[4] The circuit court answered the certified question as

---

[3]In its brief, State Farm explained that UIM rates are explained on the forms by presenting pricing of available optional coverage in several columns. The rate to be paid by an insured for optional coverage depends on several factors, including whether the policy includes a multi-car discount and whether the insured also purchases collision coverage. To assist agents in explaining the costs of the various levels of UIM coverage, State Farm developed a form that differentiated among various premiums based upon what level of coverage the insured desired to purchase.

[4]West Virginia Code 58-5-2 provides as follows:

> Any question of law, including, but not limited to, questions arising upon the sufficiency of a summons or return of service, upon a challenge of the sufficiency of a pleading or the venue of the circuit court, upon the sufficiency of a motion for summary judgment where such motion is denied, or a motion for judgment on the pleadings, upon the jurisdiction of the circuit court of a person or subject matter, or upon failure to join an indispensable party, may, in the discretion of the circuit court in which it arises, be certified by it to the supreme court of appeals for its decision, and further proceedings in the case stayed until such question shall have been decided and the decision thereof certified back. The procedure for processing questions certified pursuant to this section shall be governed by rules of appellate procedure

(continued...)

4

follows: "An insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to W Va. Code § 33-6-31d results in underinsured motorists coverage being added to the policy as a matter of law. . . ."

## II. Standard of Review

In *Burrows v. Nationwide Mutual Insurance Co.,* 215 W. Va. 668, 600 S.E.2d 565 (2004), this Court articulated the following applicable standard of review: "This Court employs a plenary standard of review when we answer certified questions." *Id.* at 672, 600 S.E.2d at 569. Similarly, in syllabus point one of *Gallapoo v. Wal-Mart Stores, Inc.*, 197 W. Va. 172, 475 S.E.2d 172 (1996), this Court stated: "The appellate standard of review of questions of law answered and certified by a circuit court is *de novo*."

The circuit court's answer to the certified question in this case also implicates issues of application of statutory law. This Court has specified that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

---

[4](...continued)
promulgated by the supreme court of appeals.

Utilizing these standards, this Court evaluates the issues underlying the certified question and the circuit court's answer thereto.

## III.  Discussion

The petitioners argue that the circuit court was correct in answering the certified question by finding that State Farm's failure to use the exact form prescribed by the Insurance Commissioner results in the addition of underinsured motorist coverage to the policy as a matter of law.  State Farm, conversely, contends that the consequence of failure to use the precise form is loss of the statutory presumption that the insured provided a reasonable offer which was knowingly rejected.

## A.  Common Law Under *Bias*

In this Court's 1987 decision in *Bias,* we were confronted with a certified question regarding underinsurance coverage available to several passengers of a bus involved in a serious motor vehicle accident.  179 W.Va. at 126, 365 S.E.2d at 790.  Finding that the insurer had presented no proof on the record that it had made an effective offer of underinsured motorist coverage to Ms. Bias, we concluded that such coverage was therefore included in her policy by operation of law.  *Id.*  This Court held as follows in syllabus point one of *Bias*: "Where an offer of optional coverage is required by statute, the insurer has the

6

burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed."[5]  *Id.* at 125, 365 S.E.2d at 789.  Syllabus point two identified the consequences of failure to prove such offer and rejection: "When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured."  *Id*. at 126, 365 S.E.2d at 790.  Further, the *Bias* Court held that an offer of optional insurance coverage must be "made in a commercially reasonable manner, so as to provide the insured with adequate information to make an intelligent decision" in order to be effective under West Virginia Code § 33-6-31.  *Id.* at 127, 365 S.E.2d at 791.  In defining "commercially reasonable," this Court explained that an offer must state "the nature of the coverage offered, the coverage limits, and the costs involved."  *Id.*

B.  Enactment of West Virginia Code § 33-6-31d

In 1993, in apparent response to the insurance industry's concerns regarding the manner in which the requirements of *Bias* should be satisfied, the Legislature enacted

---

[5]West Virginia Code § 33-6-31(b) (2011) provides that the insurer

> shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

7

West Virginia Code § 33-6-31d, providing additional clarification regarding an insurer's offer of UIM coverage. That statute provides, in pertinent part, as follows:

>     (a) Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article *shall be made available* to the named insured at the time of initial application for liability coverage and upon any request of the named insured *on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commissioner* and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any or all of the coverage offered.

>     (b) Any insurer who issues a motor vehicle insurance policy in this state *shall provide the form to each person* who applies for the issuance of such policy by delivering the form to the applicant or by mailing the form to the applicant together with the applicant's initial premium notice. . . . *The contents of a form described in this section which has been signed by an applicant shall create a presumption that such applicant and all named insureds received an effective offer of the optional coverages described in this section and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form.* Such election or rejection shall be binding on all persons insured under the policy.

>     (c) Any insurer who has issued a motor vehicle insurance policy in this state which is in effect on the effective date of this section shall mail or otherwise deliver the form to any person who is designated in the policy as a named insured. . . . *The contents of a form described in this section which has been signed by any named insured shall create a presumption that all named insureds under the policy received an effective offer of*

> *the optional coverages described in this section and that all such named insured[s] exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form.* Such election or rejection is binding on all persons insured under the policy.

W. Va. Code § 33-6-31d (emphasis supplied).

### C. Insurance Commissioner's Informational Letters

Soon after West Virginia Code § 33-6-31d was enacted, the West Virginia Insurance Commissioner provided guidance on implementation of the statutory requirements by issuing a 1993 Informational Letter, identified by the Insurance Commissioner as Number 88. That letter included two sample offer forms, an "Important Notice" to be provided with the forms, and instructions regarding completion of the forms. Another Informational Letter, identified as Number 121, was issued by the Insurance Commissioner in 2000. It modified the sample forms and included the following statement, particularly relevant to the case sub judice:

> Statutory compliance in the reproduction of the forms contained herein necessary to create a presumption of an effective offer of optional coverages and a knowing and intelligent election or rejection is achieved so long as the reproduced forms provide ALL the information set forth within the Insurance Commissioner promulgated forms. It is not necessary that the reproduced forms be exact replicas of the Commissioner forms in size and shape.

9

This Court has generally held that an entity charged with the administration of a statutory scheme is entitled to some deference, unless the entity's interpretations conflict with the statute they purport to cover. *See* Syl. Pt. 3, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W.Va. 525, 514 S.E.2d 176 (1999) ("""Where a statute is of doubtful meaning, the contemporaneous construction placed thereon by the officers of government charged with its execution is entitled to great weight, and will not be disregarded or overthrown unless it is clear that such construction is erroneous." Syllabus point 7, *Evans v. Hutchinson*, [158] W. Va. [359], 214 S.E.2d 453 (1975).' Syllabus point 8, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975)."); Syl. Pt. 4, *Sec. Nat'l Bank & Trust Co. v. First W. Va. Bancorp, Inc*., 166 W.Va. 775, 277 S.E.2d 613 (1981) ("Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous."). In *Japan Whaling Association v. American Cetacean Soc'y*, 478 U.S. 221, 233-34 (1986), the United States Supreme Court stated: "[I]f a statute is silent . . . with respect to the question at issue, our longstanding practice is to defer to the 'executive department's construction of a statutory scheme it is entrusted to administer.'" *Id.* at 233-34 (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 844 (1984)) (additional citations omitted)).

D. Application of West Virginia Code § 33-6-31d

At the outset of this Court's analysis, it is imperative to acknowledge what West Virginia Code § 33-6-31d specifically states and, perhaps more importantly, what it *fails to state*. The statute does *not* address the manner in which an insured can rebut the presumption that he or she received such an offer and knowingly rejected it. Further, conspicuously absent from the statute is any express provision regarding the result of an insurer's failure to utilize the prescribed form. There is also no provision indicating that failure to use the requisite form renders an offer of UIM coverage ineffective as a matter of law or results in coverage being added to the policy as a matter of law, as the petitioners argue in the present case.

It is clear, however, that under the plain language of West Virginia Code § 33-6-31d, an insurer must use the Commissioner's form in order to gain the benefit of the statutory presumption that (1) its offer of UIM coverage was effective, and (2) the insured's rejection of such coverage was knowing and intelligent.

West Virginia Code § 33-6-31d is premised upon the common law foundation announced in *Bias*. In addressing the application of that statute, we recognize that the Legislature is presumed to be aware of the common law underlying particular areas of

11

legislation.[6] The chronology and context of this issue of UIM coverage cannot be overstated

and is indispensably instructive. While a legislative enactment may arguably be susceptible

to doubtful interpretations when standing alone, analysis within context substantially reduces

the opportunity for erroneous application. Because the *Bias* decision had been rendered prior

to the enactment, the Legislature is presumed to have known that the commercially

reasonable standard had been established as the means for determining the efficacy of an

---

[6]It is axiomatic that we may "assume that our elected representatives . . . know the law[.]" *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97 (1979). This Court has also consistently adhered to the following principle:

> "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Syl. Pt. 5, *Community Antenna Serv., Inc. v. Charter Communications VI, LLC*, 227 W.Va. 595, 712 S.E.2d 504 (2011); *see also* Syl. Pt. 5, *Kessel v. Monongahela Cnty Gen. Hosp.*, 220 W.Va. 602, 648 S.E.2d 366 (""'When the Legislature enacts laws, it is presumed to be aware of all pertinent judgments rendered by the judicial branch. By borrowing terms of art in which are accumulated the legal tradition and meaning of centuries of practice, the Legislature presumably knows and adopts the cluster of ideas attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed." Syl. pt. 2, in part, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995).' Syllabus Point 3, *CB&T Operations Company, Inc. v. Tax Commissioner of the State of West Virginia*, 211 W.Va. 198, 564 S.E.2d 408 (2002).").

insurer's offer. The statute established the framework for the development of a form for the conveyance of information and stated that "*contents* of a form described in" that statute would create a presumption that the insureds had received an effective offer and knowingly rejected it. W. Va. Code § 33-6-31d(b) and (c) (emphasis supplied).

In addition to the context of the *Bias* common law standard, the statute must also be applied in a manner which gives meaning to the Legislature's implementation of a *presumption* that an effective offer has been made and knowingly rejected where the prescribed form has been used. Effect must be given to every word employed in a statutory enactment.[7] "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. Pt. 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999); accord *State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979) ("It is a well known rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning."). In this context, the Legislature's use of the phrase "contents of a form" must not be overlooked. *See* W.Va. Code § 33-6-31d. In order to facilitate application of the intent of the statute, the Legislature

---

[7]A closely-related concept emphasizes the need to refrain from interpretations which result in unreasonable results. *See Charter Commc'ns VI, PLLC v. Cmty Antenna Serv., Inc.*, 211 W.Va. 71, 77, 561 S.E.2d 793, 799 (2002) (internal citations and quotes omitted) ("[A] well established cannon of statutory construction counsels against . . . an irrational result [for] '[i]t is the "duty of this Court to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.").

13

primarily focused on the *contents* of the form. That observation lends additional credence to the contention that failure to use an exact replica of the Insurance Commissioner's prescribed form, while depriving an insurer of the benefit of the "presumption," would not necessarily interfere with the proper presentation of the "contents of a form" and would consequently potentially satisfy the *Bias* commercially reasonable standard.

Moreover, the Legislature's implementation of a *presumption* is pivotal in this case. As the *Martin* court aptly observed, "[t]he creation of the presumption is only given meaning when examined within the context of *Bias*. . . . Without the imposition of the evidentiary burden in *Bias*, the need for the statutory presumption created by § 33-6-31d would be nonexistent." 809 F. Supp. 2d at 505.[8]

It is axiomatic that the Legislature had the authority, in enacting West Virginia Code § 33-6-31d, to penalize an insurer for failure to utilize the precise form by requiring the immediate addition of UIM coverage as a matter of law. It did not do so. As this Court

---

[8]This Court acknowledges that the petitioners disagree with the logic of *Martin*. It could be argued that a purpose of the presumption is to provide an opportunity for an insured to rebut any presumption of an effective offer and knowing rejection, even where the insurer uses the prescribed form. However, this Court does not find that to be the only appropriate utilization of the presumption. There is no evidence, by either actual language or by implication, that the Legislature intended application of coverage to be the immediate consequence of failure to use the prescribed form. The immediate consequence of such failure is merely the loss of the benefit of the presumption of reasonable offer and knowing rejection. In the absence of such presumption, the standards of *Bias* control.

14

stated in *Motto v. CSX Transportation, Inc.*, 220 W.Va. 412, 647 S.E.2d 848 (2007), "[w]here the Legislature itself has not acted, it is improper for this Court, under the guise of statutory interpretation, to amend legislative enactments in order to judicially impose upon the Legislature a result it did not intend." *Id.* at 420, 647 S.E.2d at 856.

This Court is not at liberty to impose its own view of what the language in question should mean or what penalty for violation the legislature should have imposed.[9] "This Court does not sit as a superlegislature. . . . It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions." *Boyd v. Merritt*, 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986); *see also State v. Anderson*, 212 W.Va. 761, 765, 575 S.E.2d 371, 375 (2002). There is nothing in the express statutory language of West Virginia Code § 33-6-31d to indicate that the addition of coverage is the necessary immediate consequence of failure to utilize the prescribed form.[10]

---

[9]"Legislative intent is found not in what the legislature meant to say but in the meaning of what it did say." *Dana-Robin Corp. v. Common Council*, 348 A.2d 560, 567 (Conn. 1974).

[10]In *Perito v. County of Brooke*, 215 W.Va. 178, 597 S.E.2d 311 (2004), this Court stated:

"[I]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted. . . . Moreover, [a] statute, or an
(continued...)

15

Furthermore, there is nothing in the express language of the statute to indicate a legislative intent to invalidate or render obsolete the standard of *Bias*. Although the petitioners contend that *Bias* is no longer viable and has been superceded by West Virginia Code § 33-6-31d, a clear reading of the cases referencing *Bias* as being superceded reveals that only a *portion* of *Bias* was superceded by the statute. Even *Ammons v. Transportation Insurance Co.*, 219 F.Supp.2d 885 (S.D. Ohio 2002), a case relied upon by the petitioners in support of their position and examined later in this opinion, recognizes that only "the portion of *Bias* that sets forth the information that must be contained in an offer of optional coverage for it to be effective has been superceded by [the statute]." *Id.* at 894.

This Court agrees with the State Farm's argument that *Bias* was not rendered obsolete by the enactment of West Virginia Code § 33-6-31d. As this Court stated in syllabus point three of *State ex rel. Van Nguyen v. Berger*, 199 W.Va. 71, 483 S.E.2d 71 (1996):

> "The common law, if not repugnant of the Constitution of this State, continues as the law of this State unless it is altered or changed by the Legislature. Article VIII, Section 21 of the Constitution of West Virginia; Chapter 2, Article 1, Section 1, of the Code of West Virginia." Syllabus Point 3, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962).

[10](...continued)
administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten."

*Id.* at 184, 597 S.E.2d at 317 (additional internal quotations and citations omitted).

16

Syllabus point four of *Van Nguyen* continued: "'"The common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested." *Shifflette v. Lilly*, 130 W.Va. 297, 43 S.E.2d 289 [1947].' Syllabus Point 4, *Seagraves v. Legg*, 147 W.Va. 331, 127 S.E.2d 605 (1962)." Thus, if the Legislature had sought to designate *Bias* as entirely effaced by the statute, it would have done so. "If the Legislature intends to alter or supersede the common law, it must do so clearly and without equivocation." *Van Nguyen*, 199 W.Va. at 75, 483 S.E.2d 71 at 75.[11]

The parties also address the Legislature's provision that the prescribed form "shall" be used by the insurer. In that regard, this Court has often quoted the axiom that

---

[11]Additional authorities cited by the parties reference *Bias* without significant or determinative analyses of its continued viability. *See, e.g.*, *W. Va. Emp'rs. Mut. Ins. Co. v. Summit Point Raceway Assoc.*, 228 W.Va. 360, 719 S.E.2d 830 (2011) (discussing that statute was "apparent endorsement" of *Bias,* referencing *Bias* as superceded, but failing to address question currently before this Court); *Luikart v. Valley Brook Concrete & Supply, Inc.*, 216 W.Va. 748,754 n.11, 613 S.E.2d 896, 902 n.11 (2005) (citing *Bias* in a footnote for the concept that insurers are required to offer "certain coverage benefits" in automobile insurance and noting that *Bias* was superseded by statute "as recognized in *Ammons*. . . ."); *Jewell v. Ford ("Jewell I")*, 211 W.Va. 592, 567 S.E.2d 602 (2002) and *Jewell v. Ford ("Jewell II")*, 214 W.Va. 511, 590 S.E.2d 704 (2003) (finding that factual issues regarding whether the insurer had completed Insurance Commissioner's prescribed form in such manner that effective offer was made precluded summary judgment). The parties also discuss this Court's opinion in *Westfield Insurance Co. v. Bell*, 203 W.Va. 305, 507 S.E.2d 406 (1998). While that case is instructive on the broad issue of offering optional coverage, it is not helpful to this Court's analysis herein because it was based upon a form developed by an insurance company *after* West Virginia Code § 33-6-31d became effective but *before* the Insurance Commissioner had issued the prescribed form in Informational Letter Number 88. Moreover, in *Westfield,* this Court did not address the consequences of failure to comply with the Commissioner's guidelines. *See Westfield*, 203 W.Va. at 309, 507 S.E.2d at 410.

17

legislative use of the word "shall" denotes a mandatory obligation.[12]  In syllabus point one

of *E.H. v. Matin*, 201 W.Va. 463, 498 S.E.2d 35 (1997), for instance, this Court explained

that "'[i]t is well established that the word "shall," *in the absence of language in the statute*

*showing a contrary intent* on the part of the Legislature, should be afforded a mandatory

connotation.'  Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board*,

171 W.Va. 445, 300 S.E.2d 86 (1982)." (emphasis supplied).

        While courts justifiably commence their analyses with the premise that the use

of the word "shall" forecloses the exercise of discretion, detailed evaluation often reveals that

the use of "shall" is not determinative or that other language in the statute reveals a contrary

intent.  For instance, this Court has observed a distinction between "mandatory" and

"directory" based upon whether a penalty[13] has been established for noncompliance with a

---

[12]In order to properly evaluate the distinction between the terms "mandatory" and "directory," this Court must acknowledge the misleading characterization of those terms in some of our relatively recent opinions.  Various discussions have inaccurately referenced the term "directory" as being synonymous with the term "mandatory;" the terms are actually antonyms.  The term "directory" is defined as "providing advisory but not compulsory guidance."  Webster's New Collegiate Dictionary 320 (1979).

[13]A "statutory penalty," is defined as a "penalty imposed for a statutory violation; esp., a penalty imposing automatic liability on a wrongdoer for violation of a statute's terms without reference to any actual damages suffered."  Black's Law Dictionary 1247 (9th ed. 2009).  Thus, a statutory penalty "(1) impose[s] automatic liability for a violation of its terms; (2) set[s] forth a predetermined amount of damages; and (3) impose[s] damages without regard to the actual damages suffered by the plaintiff."  *Landis v. Marc Realty*, 919 N.E.2d 300, 307 (Ill. 2009), *citing McDonald's Corp v. Levine*, 439 N.E.2d 475, 480 (Ill. App. Ct.1982).

(continued...)

18

legislative pronouncement. In *State v. Hager*, 102 W.Va. 689, 136 S.E. 263 (1926), this Court held that "[i]t is an established rule of construction that where a legislative provision is accompanied with a penalty for failure to observe it, the provision is mandatory." *Id.* at 692, 136 S.E. at 264 (citations omitted). In *State ex rel. Board of Education v. Melton,* 157 W.Va. 154, 198 S.E.2d 130 (1973), this Court addressed the mandatory/directory distinction and reasoned as follows:

> Generally the use of the word 'shall' in statutes limits or prevents the exercise of discretion, however, such use is not always conclusive in determining whether 'shall' represents a mandatory or directory instruction. *Canyon Public Service District v. Tasa Coal Company*, W.Va., 195 S.E.2d 647. There is no universal rule by which directory provisions may be distinguished from those which are mandatory. 1A Sutherland, Statutory Construction, § 25.03, page 299. Generally, whether a statute is mandatory or directory is determined from the intention of the Legislature. If that intention is to make compliance with the statute essential to the validity of the act directed to be done, the statute is mandatory. *State ex rel. Kennedy v. Boles*, 150 W.Va. 504, 147 S.E.2d 391; *State v. Carduff*, 142 W.Va. 18, 93 S.E.2d 502; *State ex rel. Thompson v. Fry*, 137 W.Va. 321, 71 S.E.2d 449.

---

[13](...continued)

The statute in the case sub judice does not expressly provide a penalty for failure to use the prescribed form, as the term penalty is defined above. The statute offers a benefit by specifying that "the contents of the form . . . shall create a presumption" of effective offer and knowing rejection. W. Va. Code § 33-6-31d (emphasis supplied). Thus, without gaining the presumption, an insurer simply remains at the status quo, with the statute neither adding to nor detracting from that status. To propose that the statute does create a penalty for failure to use the prescribed form is tantamount to adding more language to the statute than the Legislature included.

19

*Id.* at 165, 198 S.E.2d at 136.

In *State ex rel. Kennedy v. Boles*, 150 W.Va. 504, 147 S.E.2d 391 (1966), this Court provided an instructive explanation of the mandatory/directory distinction, as follows:

> The distinction between mandatory and directory statutory provisions is clearly stated in 82 C.J.S., Statutes, Section 376, and 50 Am.Jur., Statutes, Section 25. In 82 C.J.S., Statutes, Section 376, the text contains this language: "Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, *or is a mere matter of form*, and what is a matter of essence can often be determined only by judicial construction. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of *convenience rather than substance*, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and a statute is regarded as directory where no substantial rights depend on it, no injury can result from ignoring it, and the purpose of the legislature *can be accomplished in a manner other than that prescribed*, with substantially the same results."

150 W.Va. at 511-12, 147 S.E.2d at 396 (emphasis supplied). The *Kennedy* Court also held that "[i]f, however, the intention of the Legislature is not to make compliance with the statute essential to the validity of the act directed to be done or the procedure to be followed, the statute is merely directory." *Id*.

In *Calwell's Executor v. Prindle's Administrator,* 19 W.Va. 604, 1882 WL 3581 (1882), this Court dealt with the distinction between mandatory and directory in

litigation involving whether a statutory requirement for certain columns in a document had been satisfied. In that civil action concerning matters of liens, debts, and property sold in trust, the issue of a statutory requirement that different items "shall be stated in separate columns" arose, and this Court stated:

> This raises the question, whether the statute in this respect is mandatory or simply directory. I am of the opinion, that the statute in this respect must be held as simply directory and not mandatory, if for no other reason, because the thing directed to be done in this particular is not the essence of the thing required. Lord Mansfield in *Rex v. Loxdale*, 1 Burr. 447; Pott Dwarr. on Statutes, &c., of 1871, 222, 223, 224, 226, notes; *Marchant v. Langworthy*, 6 Hill. 646; *Striker v. Kelly*, 7 Hill. 9; *People v. Cook*, 8 N. Y. 67; *People v. Cook*, 14 Barb. 290; *People v. Schermerhorn*, 19 Barb. 558. In the last case it was held, that a statute is directory, where the thing is directed to be done is an immaterial matter, where a compliance is matter of convenience rather than substance. In Dwarr. on Statutes at page 226 in a note it said: "And in general it may be laid down as a rule, that when a statute directs certain proceedings to be done in a certain way or at a certain time, and the form or period does not appear essential to the judicial mind, the law will be regarded as directory, and the proceedings under it will be held valid, though the command of the statute as to form and time has not been strictly obeyed; the time and manner not being the essence of the thing required to be done." This it seems to me states a good general rule upon the subject.

19 W.Va. at 666, 1882 WL at *39. Syllabus point eleven of that opinion held as follows:

> As a general rule, where a statute directs certain proceedings to be done in a certain way, and the form does not appear essential to the judicial mind, the law will be regarded as directory, and the proceedings under it will be held valid, though the command of the statute as to form has not been strictly obeyed, the manner not being the essence of the thing to be done. (p. 666).

21

*Id.* at 608, 1882 WL at *4.

Other jurisdictions have also aptly explained the distinction between mandatory and directory. As observed by *State v. Teer*, 275 S.W.3d 258 (Mo. 2009), "[t]here are cases that have qualified the interpretation of the word 'shall' by holding that 'where a statute or rule does not state what results will follow in the event of a failure to comply with its terms, the rule or statute is directory and not mandatory.'" *Teer*, 275 S.W.2d at 261 (citing *Bauer v. Transitional School District of City of St. Louis*, 111 S.W.2d 405, 408 (Mo. banc 2003))*; Cline v. Carthage Crushed Limestone Co.*, 504 S.W.2d 118 (Mo.1974).

Such reasoning was also employed in *People v. Borys*, 2013 WL 4516945 (Ill. App. Ct. 2013), wherein the court held that statutes are considered mandatory if the legislature dictates a particular consequence for failure to comply with the provision. *Id.* at *5. Yet, if a consequence is not included, the statute is considered directory, and noncompliance does not result in any particular consequence. *Id.*; s*ee also Santiago v. Slate*, 804 A.2d 801 (Conn. 2002) (holding that statute is mandatory if it addresses matter of substance. If it is simply a matter of convenience, it is considered directory); *In re M.I.*, 989 N.E.2d 173 (Ill. 2013) (holding that mandatory or directory distinction is made by determining whether intent of legislature dictates particular consequence for failure to comply); *Columbia Road Citizens' Ass'n v. Montgomery Cnty,* 635 A.2d 30 (Md. Ct. Spec.

22

App. 1994) (holding that "must" is considered mandatory where statute provides sanction for noncompliance); *Tx. Dept. of Public Safety v. Shaikh*, 2013 WL 373441 (Tex. Crim. App. 2013) (holding that courts will generally give word "must" a mandatory meaning when it is followed in statutory language by noncompliance penalty); *Vill. of Elm Grove v. Brefka*, 832 N.W.2d 121 (Wis. 2013) (holding that factors to be considered in determining whether "shall" is mandatory are whether statute includes penalty, what consequences are stated for violation, and nature and object of statute).

In applying West Virginia Code § 33-6-31d to the present case, this Court must be cognizant of the statute's inclusion of the benefit of the presumption to insurers who use the prescribed form. We find no evidence in the clear language of the statute to indicate that the Legislature intended to construct a paradigm in which failure to utilize the precise form prescribed by the Insurance Commissioner to convey optional insurance coverage information would result in the immediate addition of coverage as a matter of law.

E. Precedent and Authority of Other Jurisdictions

The question raised in the case sub judice was evaluated by the United States District Court for the Southern District of West Virginia in *Martin v. State Farm Mutual Automobile Insurance Co.*, 809 F. Supp. 2d 496 (S.D. W. Va. 2011). In that case, the district court addressed an insurer's utilization of a form that included all the information required

to be included in the Insurance Commissioner's form but also included *additional* information.[14]  The *Martin* court concluded that even where an insurer's forms vary impermissibly from the Commissioner's forms by including additional information, the consequence of that deficiency was merely the loss of the *presumption* under West Virginia Code § 33-6-31d, rather than the addition of UIM coverage as a matter of law.  809 F. Supp. 2d at 507.  In such situation, the insurer would thereafter be required to prove, under the criteria enunciated by this Court in *Bias*, that its offer was commercially reasonable and that the insured's rejection of such offer was knowing and intelligent.  *Id.*

Thus, under the application of West Virginia Code § 33-6-31d espoused by the district court in *Martin*, the Legislature did not have to identify any consequence of failure to use a prescribed form because *Bias* had already been decided and would presumably be utilized as the fundamental method of determining whether a commercially reasonable offer had been made.  As observed above, West Virginia Code § 33-6-31d clearly provides that an insurer who utilizes the Insurance Commissioner's prescribed form is entitled to a presumption that the insured thereby received an "effective offer" of UIM coverage and "exercised a knowing and intelligent election or rejection, as the case may be, of such offer."

[14]The *Martin* court noted that the form prescribed by the Insurance Commissioner contained only five columns; the forms utilized by State Farm contained six or eight columns, the first three of which were the same as the Insurance Commissioner's prescribed forms. 809 F.Supp.2d at 504. However, the final two to four columns in the State Farm forms listed additional information regarding premiums per coverage level.  *Id.*

*Id*. at 33-6-31d(b).  As indicated previously, however, the statute does not explicitly identify the consequences of failure to use the prescribed form.  The *Martin* court determined that the answer to that query lies in the standards set forth in *Bias*.  The *Martin* court reasoned as follows*:*

> A presumption is "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." Black's Law Dictionary (9th ed. 2009).  *The creation of the presumption is only given meaning when examined within the context of Bias.*  There, the West Virginia Supreme Court of Appeals concluded that the *insurer bears the evidentiary burden* of proving that an effective offer of the optional insurance was made.  *Bias*, 365 S.E.2d 789 at Syl. Pt. 1.  *Without the imposition of the evidentiary burden in Bias, the need for the statutory presumption created by § 33-6-31d would be nonexistent.*

809 F. Supp. 2d at 505 (emphasis supplied).

The petitioners, on the other hand, rely extensively upon an opinion by United States District Court for the Southern District of Ohio in *Ammons v. Transportation Insurance Co.*, 219 F.Supp.2d 885 (S.D. Ohio 2002),[15] which the *Martin* court found clearly

[15]The parties also cite cases from other jurisdictions that are somewhat helpful to this Court's analysis.  In South Carolina, for instance, the guiding statute mandates that a certain form be utilized and creates a presumption of an effective offer and knowing rejection through the use of such form.  *See* S.C. Code Ann. § 38-77-350.  In an opinion dealing with the consequences of failure to properly use the prescribed South Carolina form, the Supreme Court of South Carolina concluded that the underlying common law standards of *State Farm Mutual Automobile Insurance Co v. Wannamaker,* 354 S.E.2d 555 (S.C. 1986), the South Carolina equivalent of *Bias*, were still available to determine the efficacy of an offer where the prescribed form was not properly completed by the insurer.  *See also McWhite v. ACE*

(continued...)

25

distinguishable.  In *Ammons*, the Ohio court examined a form utilized by Allstate[16] that

deviated significantly from the form prescribed by the Insurance Commissioner, failed to list

[15](...continued)
*Am. Ins. Co.*, 412 Fed. Appx. 584, 587-88 (C.A. 4 S.C. 2011) ("The meaningful offer requirement can be satisfied in one of two ways: compliance with S. C. Code Ann. § 38–77–350(A) or satisfaction of the four-part test the South Carolina Supreme Court established in *State Farm Mutual Insurance Co. v. Wannamaker*, 354 S.E.2d at 556.").

In response to State Farm's contentions regarding South Carolina's approach, the petitioners argue that these South Carolina cases are of limited applicability because South Carolina permits insurance companies to submit their own forms for approval. Instead, the petitioners direct this Court's attention to North Carolina cases in which a specific form has been mandated and deviation is not permitted. *See State Farm Mut. Auto Ins. Co. v. Fortin*, 513 S.E.2d 782 (N.C. 1999) (holding that coverage to liability limits became available due to failure to use mandated form); *Erie Ins. Exch. v. Miller*, 584 S.E.2d 857 (N.C. App. 2003) (requiring strict adherence to mandated form).  The *Miller* court held: "Because North Carolina by statute requires the use of a particular form and neither the statute *nor any administrative ruling by the Commissioner of Insurance has provided for modification of the format of that form*, Erie was required to strictly adhere to the required format."  584 S.E.2d at 859 (emphasis supplied).  In a subsequent case, however, the Court of Appeals of North Carolina approved a slight deviation in the standard form, reasoning as follows: "Allstate's Selection/Rejection Form uses the precise wording contained in the Rate Bureau's form in its entirety.  The only deviation from the promulgated form is Allstate's inclusion of additional language which explains uninsured and UIM coverage.  There is no change or substantive amendment to the text of the Rate Bureau's form."  *Stegenga v. Burney*, 620 S.E.2d 302, 304 (N.C. App. 2005).

State Farm counters the petitioners' arguments by emphasizing that North Carolina cases should not be relied upon because North Carolina does not have a statutory *presumption* created by the use of the prescribed form.  While these cases from other jurisdictions are minimally informative, they are neither direct authority nor squarely on point with the situation we presently confront.  The determination of the certified question currently before this Court must be premised upon the context of the unique statutory and common law of this state.

[16]The delivery truck involved in an accident in *Ammons* was licensed in West Virginia and leased by a West Virginia employer.  Thus, West Virginia law applied.  *Ammons*, 219 F. Supp. 2d at 887.

all vehicles in the fleet to be potentially covered by the offer, and failed to include the premiums for each optional level of coverage on its selection/rejection form. Allstate acknowledged in *Ammons* "that the forms it provided . . . did not comply with § 33-6-31d, as they contained neither a listing of each vehicle covered under the policy nor the premiums associated with each optional level of coverage." 219 F. Supp. 2d at 892. In analyzing that situation, the *Ammons* court observed:

> Allstate acknowledges that the forms it provided to Rich [the insured] did not comply with §33-6-31d, as they contained neither a listing of each vehicle covered under the policy nor the premiums associated with each optional level of coverage. Allstate contends, however, that strict compliance was not necessary under these circumstances. In particular, Allstate argues that the "oppressive paperwork" that would have been necessary made it impractical for it to list each vehicle in the Flowers fleet. Instead, it simply attached a schedule of vehicles to the policy, and wrote "see vehicle schedule" on the UIM Coverage form.

219 F. Supp. 2d at 892. The *Ammons* court found that compliance with the requirements of the statute was necessary, even though a representative of the insured had indicated that it did not want UIM coverage. The court reasoned as follows:

> Allstate's failure to comply with §33-6-31d *by failing to set forth a premium breakdown showing the cost of each optional coverage limit must be construed as a failure to make an effective and commercially reasonable offer.* Without such offer, there could be no knowing, intelligent waiver of the optional coverage.

*Id*. at 894. Based upon the findings of the *Ammons* court, the UIM coverage was added to the policy as a matter of law.

27

This Court agrees with the *Martin* court and finds that the *Ammons* decision is clearly distinguishable. First, the *Ammons* court did not address the precise question raised herein concerning the effect of the presumption language included in the statute and, in fact, never mentioned the statutory presumption in the opinion. Second, inherent in the reasoning of the *Ammons* court was a recognition that Allstate not only failed to use the precise form but *also* failed to incorporate the elements necessary to satisfy the substantive requirements of a reasonable offer. In other words, as the *Martin* court articulated, "unlike in the instant case, Allstate's forms [in *Ammons*] did not include all the required information. In contrast, here, State Farm's forms do include all the required information; they just include additional information as well." *Martin*, 809 F. Supp. 2d at 507.

As a result of the more precise and logically cohesive reasoning of the *Martin* court, it becomes apparent that two separate elements require analysis: (1) the consequences of the failure to use the precise form; and (2) whether a commercially reasonable offer has nonetheless been made. The *Ammons* court essentially combined these two inquires, likely based upon the manner in which the concepts were presented to it; the issue of the "presumption" contained in the statute was therefore never addressed.

Moreover, the *Ammons* court was presented with an acknowledgment by Allstate that its forms did not contain all the required information. In contrast to *Ammons*,

28

and almost identical to the case sub judice, the *Martin* court was confronted with a form that provided *all* the required information but deviated from the Insurance Commissioner's prescribed form by including additional information which arguably rendered the form unreasonably confusing. Thus, the *Martin* court found that the deviation from the Insurance Commissioner's form resulted in merely the loss of the presumption and thus, the issue of the commercial reasonableness of the offer required assessment under the standards of *Bias*. This Court agrees with the reasoning of the *Martin* court and also adopts that interpretation of the application of the statute.

## IV. Conclusion

Based upon the foregoing and in answer to the certified question presented herein, this Court holds as follows: An insurance company's failure to use the West Virginia Insurance Commissioner's prescribed forms pursuant to West Virginia Code § 33-6-31d (2011) results in the loss of the statutory presumption and a reversion to the standards enunciated in *Bias v. Nationwide Mutual Insurance Co.*, 179 W. Va. 125, 365 S.E.2d 789 (1987). Thus, upon loss of the presumption, the insurer is thereafter obligated, under the standards articulated in *Bias,* to prove that (1) it made a commercially reasonable offer of coverage to the insured, and (2) the insured's rejection of such coverage was knowing and intelligent.

State Farm asserts that, in the alternative, this Court need not reach the certified question. State Farm bases this notion on its belief that it is entitled to the presumption under West Virginia Code § 33-6-31d. This Court declines that invitation and answers the question as framed by the circuit court. Based upon this Court's answer, State Farm's assertion that its offer was commercially reasonable and knowingly rejected will be evaluated under the standards enunciated in *Bias* after thorough discovery opportunities by the parties.[17]

Certified Question Answered.

---

[17]Clearly, if an insurer's offer of UIM coverage is determined to be unreasonably complicated or difficult for a potential insured to comprehend, it could rather soundly be argued that the offer was not commercially reasonable under the standards of *Bias.*